Argued and submitted June 5, 1995, reversed and remanded March 27, 1996

Milton O. BROWN,
*Appellant,*

*v.*

CITY OF PORTLAND,
a municipal corporation,
*Respondent.*

(9305-02878; CA A84750)

913 P2d 1385

Barry L. Adamson argued the cause and filed the briefs for appellant.

Harry M. Auerbach, Deputy City Attorney, argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

**LANDAU, J.**

Petitioner Milton Brown petitioned for a writ of review of a decision of respondent City of Portland (City) assessing charges for nuisance abatement work performed by the City. The trial court affirmed the City's decision, and petitioner appeals. ORS 34.100. We reverse and remand.

The facts are not disputed. Before describing them, however, it is necessary to set forth the legal framework for the actions of the parties.

The City has adopted a nuisance abatement ordinance, which describes the procedure by which it may determine that a nuisance exists and the steps that it may take to remedy it. Section 18.03.010 of the City Code of Portland provides that, whenever the Director of the Bureau of Buildings has knowledge of a nuisance, as defined by city ordinance, the Bureau

> "shall post upon the property liable for the abatement of the nuisance a notice directing the removal of the nuisance."

Section 18.03.010(d) provides that, after posting that notice, the Director

> "shall cause a copy of the notice so posted to be mailed with the postage prepaid to the owner or agent of the owner of the real property, directed to his last known address or, if that address is unknown, to the owner or agent at the address of the property.
>
> "An error in the name of the owner or agent or the use of a name other than that of the true owner or agent of the property shall not render the notice void, but in such case the posted notice shall be deemed sufficient."

Section 18.03.020 provides that, within 15 days of the posting and follow-up mailing, the owner of the property must either abate the nuisance or show that no nuisance actually exists. Section 18.03.030 then provides that, if the owner fails to do either, the City may abate the nuisance and bill the owner for the charges, plus an overhead charge of 26 percent and a civil penalty of $200 for each nuisance abated.

Brown owns a building located at 732 NE 94th Avenue, in Portland. On March 11, 1992, there was a fire at the building. On June 25, the City Bureau of Buildings received a complaint about fire debris at the property. A City inspector viewed the property, determined that a nuisance existed and posted a notice. The record does not contain a copy of that notice, but City records indicate that a notice requesting removal of the nuisance was posted on July 6, 1992.

The City then sent a copy of the notice by mail, addressed as follows:

"Oregon State Of (Cont To
4826 NE 99th Ave
Portland, Oregon"

The State of Oregon is not the owner of the property, and 4826 NE 99th Avenue is not and never was Brown's address. The notice was returned to the city, marked "addressee unknown."

On July 29, Brown received a telephone call from a contractor who said that he had seen "a notice" of unspecified content at the fire-damaged property and asked Brown if he could "do the job of boarding up the house." An employee of Brown's immediately contacted the City Bureau of Buildings, advised the City of the correct address and that the City apparently had sent the notice to the wrong address. The employee told the City that the property already had been boarded up and requested a copy of any notices that the City had sent concerning the property. According to Brown, the City's representative then

"advised our office that if the house was boarded there was probably nothing we had to worry about until we would receive a work order. If there was a work order sent we then contact the person in charge as to what additional action had to be taken on our part to abate the nuisance."

There is no evidence in the record that the City ever sent Brown a copy of the July 6 notice of abatement. The City did send Brown a copy of a work order. Unfortunately, the City addressed it to:

"Milton O. Brown
Oregon State of (Contracted To
4826 NE 99th Ave
Portland, Oregon"

There is no evidence that Brown ever received the mis-addressed work order.

On August 26, 1992, having received no information that Brown had responded to the work order, the City contracted for removal of the nuisance. The work was completed August 31, 1992. The City then sent Brown the bill for the cleanup, after adding a 26-percent overhead charge and a penalty of $200.

Brown challenged the charges. He argued that, among other things, he never received the notice that the City Code requires and that some of the work for which he was being charged exceeded the scope of the work order. A City hearings officer held that, under section 18.03.010(d), any defect in the follow-up notice is harmless as long as there was proper posting at the property. The hearings officer, however, also held that some of the work for which Brown was charged did exceed the scope of the work order, and the charges were adjusted accordingly.

Brown petitioned for a writ of review. The trial court held that the hearings officer was incorrect in reading section 18.03.010(d) to excuse *all* defects in the follow-up notice. It orally ruled that the case was to be remanded for further findings as to the sufficiency of the follow-up notice and asked counsel to prepare an appropriate order. After reading a transcript of the proceedings, Brown's counsel thought that the trial court's ruling as to the proper interpretation of the ordinance was dispositive. Accordingly, he prepared a form of judgment reversing the hearings officer's decision, along with a letter of explanation for the proposed form of judgment. The City did not object to the form of the judgment, and the trial court entered it as submitted. Over a month later, the City moved to vacate the judgment, and the trial court granted the motion, explaining that it had never intended to do anything other than remand the matter to the hearings officer:

"I know that counsel failed to object within the statutory period of time to the proposed judgment, and because of that, the judgment was signed. But given what has been happening procedurally, I can see what the confusion might have been on both sides, [counsel for Brown] presenting a judgment and [counsel for the City] then not objecting within the required period of time."

On remand, the hearings officer found that, because there was an error in the name on the follow-up notice, section 18.03.010(d) applied, and the posting sufficed. The trial court affirmed the hearings officer's decision.

On appeal, Brown first argues that the trial court erred in granting the City's motion to vacate the judgment that reversed the hearings officer's decision. According to Brown, the City waited too long and offered no explanation to the trial court for its failure to object to the form of the judgment when it had the opportunity to do so. The City argues that the trial court was justified in vacating the judgment, because the judgment varied from the form that the trial court had ordered.

ORCP 71 B(1)(a) provides that the trial court has discretion to set aside a judgment taken against a party through mistake, inadvertence, surprise or excusable neglect. The rule is generally construed liberally, to the end that the matter in controversy is determined on the merits. *Old Republic Surety Co. v. McIlwain*, 115 Or App 615, 618, 839 P2d 743 (1992). We review the court's decision for abuse of its discretion. *Pacheco v. Blatchford*, 91 Or App 390, 392, 754 P2d 1219, *rev den* 306 Or 660 (1988).

After carefully reviewing the record, we cannot say that the trial court abused its discretion. There is no question that counsel for the City was less than diligent in failing to examine the form of the proposed order and in failing to object when there was opportunity to do so. At the same time, although we have no doubt of Brown's counsel's good faith, it cannot go unsaid that he was skating on thin ice when he submitted to the trial court a judgment that differed so substantially from what the trial court ordered and the City expected to see. Under the circumstances, neither party

acted in a manner that effectuated the trial court's intentions. The trial court found that that state of affairs apparently was occasioned by "confusion" on the part of both parties as to its intentions and, on that basis, set aside the judgment. The court was entitled to so find, and its decision to vacate the judgment was not an abuse of discretion.

■ Brown next argues that the trial court erred in affirming the assessment of charges against him, because he has never received the follow-up notice that section 18.03.010(d) requires and that the only notices that the City mailed were sent to the wrong person at the wrong address. He argues that the City told him that he was not required to do anything further about his property unless he received a work order notice, and he never received that either, because it was mailed to the wrong address.

The City argues that the trial court correctly affirmed the assessment of charges against Brown. According to the City, the "safe harbor" provision of section 18.03.010(d) of the City Code, which provides that a posted notice suffices in the event of "an error in the name of the * * * owner" of the property, applies in this case, because there was an error in the name on the July 6 notice of abatement.

Brown responds that the safe harbor provision cannot apply, because there was not simply an error in the name of the addressee; there was instead a notice sent to the wrong party at the wrong address. The City argues that Brown's contention that the safe harbor provision does not save "a notice mailed to the *wrong person* at that *wrong person's* last known address * * * does not make sense in the context of the ordinance." (Emphasis in original.) According to the City, federal law making it a crime to open another person's mail is part of the context of the ordinance. From that observation, the City draws the conclusion that it cannot matter that the notice that it mailed was sent to both the wrong person and the wrong address, because, in either event, the recipient could not open the mail.

■■ Resolution of the foregoing dispute hinges on the meaning of the so-called "safe harbor" provision of section 18.03.010(d) of the City Code of Portland. Determination of

the meaning of an ordinance presents a question of law, to which we apply the same interpretive principles that govern the construction of statutes. *Lincoln Loan Co. v. City of Portland*, 317 Or 192, 199, 855 P2d 151 (1993). We examine the text of the ordinance in its context, and, if necessary, we consider extrinsic evidence of the enacting body's intentions and other aids to construction. *Id.*

In this case, the text of the ordinance says only that "an error in the name of the property owner" does not void the follow-up notice of abatement. It does not say, as the City urges us to conclude, that other errors, such as sending the notice to an incorrect address, are of no consequence as well. If, in fact, the ordinance were intended to say that errors in names or addresses were inconsequential, we see no reason why the language could not simply say that. The fact is that it does not. Nor can the reference to the "name of the owner" reasonably be construed to include the recipient's address as well. Other provisions of the ordinance refer separately to names and addresses, and to the proper procedures to be followed if the correct address is not known. Thus, it is clear that, when the ordinance refers to the "name of the owner," it refers only to the name of the owner, and not to the "name and address of the owner."

We conclude that the ordinance must be construed to mean what it says: An error in the owner's name only does not void the follow-up notice; other errors that effectively ensure that there is no possibility that the owner will receive the follow-up notice are not so inconsequential.

■    The City argues in the alternative that, even if its follow-up notice was void, Brown cannot be heard to complain, because he received actual notice to abate the nuisance. Assuming for the sake of argument only, that actual notice would cure an otherwise defective follow-up notice, the fact is that there is no evidence in this record that Brown received the notice the City asserts. Neither the hearings officer nor the trial court made any such finding. Our own review of the record reveals only that Brown received a call from a contractor nearly a month after the initial posting at the fire-damaged property. The contractor said that the property had been posted, and an employee of Brown's telephoned the City

Bureau of Buildings to inquire what the City wanted Brown to do. The employee recalls that, after telling the representative of the Bureau that the building had been boarded up, the Bureau representative said that nothing else would be required unless Brown received a work order. The City offered no contrary testimony or other evidence. It did send a work order, but its own records show that the work order was sent to an incorrect address. There is no evidence that Brown ever received that notice. Under the circumstances, we find no evidence of actual notice to Brown that the City was going to take any further action as to his property.

Because we conclude that the trial court erred in determining that section 18.030.010(d) of the City Code of Portland excused the City's failure to provide follow-up notice of abatement, we need not address Brown's other assignments of error.

Reversed and remanded.