Argued and submitted March 5, 1992, decision of the Court of Appeals and the judgment of the circuit court reversed; case remanded to circuit court for further proceedings July 22, 1993

## LINCOLN LOAN CO.,
*Petitioner on Review,*

*v.*

## CITY OF PORTLAND,
*Respondent on Review,*

*and*

## Bill R. LaBENSKE, Jr.,
and Patricia E. LaBenske,
dba Guarantee Construction Co.,
*Respondents (below).*

(CC A8810-05939; CA A65509; SC S38335)

855 P2d 151

Steven E. Benson, Portland, argued the cause and filed the petition on behalf of petitioner on review.

Valencia R. Tolbert, Deputy City Attorney, Portland, argued the cause and filed a response to the petition on behalf of respondent on review.

UNIS, J.

## UNIS, J.

Under authority of Portland City Code (PCC) 22.05.010(a)(2), the City of Portland (the city) may order removal of a nuisance. The question presented in this case is whether the city may demolish a vacant residential structure found to create a nuisance without a finding on the record that demolition is a reasonable choice of remedy to address the problem created by the nuisance. We answer that question "no."

The facts that we recite are undisputed. Lincoln Loan Company (petitioner) has been the owner of record of a small single-family house. In early 1986, petitioner sold the property on an unrecorded contract to Bill and Patricia LaBenske (the LaBenskes), contractors who intended to remodel and sell the house. Petitioner retained title of record and a vendor's security interest in the property. Although the LaBenskes stopped making payments, petitioner did not initiate foreclosure proceedings.

On June 21, 1988, the city's Bureau of Buildings sent petitioner a letter stating that the "vacant, abandoned, one story, wood frame, single family residence" had been inspected and "found to be dangerous" within the meaning of PCC Chapter 24.55. The letter identified several existing code violations and stated that, unless measures were taken within 30 days to secure the necessary permits to repair or remove the house, the matter would be referred to the city's code enforcement hearings officer.

On August 22, 1988, the city served petitioner with a complaint that charged petitioner with maintaining a building with the following code violations:

"1. The structure is vacant and open to entry, creating an attractive nuisance to children and a harbor for vagrants or criminals. 24.15.060 (10, 13 & 14)

"2. Portions of the wall coverings are missing. 34.15.060 (13)

"3. Interior and exterior contain a large amount of debris. 24.15.060 (11 & 13)

"4. Portions of the framing lack clearance to grade and are inadequately supported. 24.15.060 (6, 11)

"5. Several windows and doors have damaged frames and broken glass. 24.15.060 (11, 13)

"6. Plumbing violations including, but not limited to:

"Water closet is missing. Unapproved material is being used. Several waste lines are leaking. A complete inspection by the City Plumbing Inspector, for which a fee is charged, is required prior to repair. 24.15.060 (11, 13)

"7. Electrical violations including, but not limited to:

"New wiring installed without a permit. A complete inspection by the City Electrical Inspector, for which a fee is charged, is required prior to repair. 24.15.060 (11, 13)

"8. The above conditions/defects endanger the safety of the public/occupants. 24.15.060" (Emphasis omitted.)

The complaint sought an order requiring correction of the violations and compliance with the city code, a civil penalty of $500, and an order authorizing demolition of the building.

At a hearing on September 1, 1988, petitioner was represented by a lawyer and by one of petitioner's officers. The city, through the testimony of a building inspector, presented evidence of several code violations and sought only demolition of the building and a civil penalty; it did not seek to have the building repaired to eliminate the code violations. At the conclusion of the hearing, the hearings officer orally made the following findings of fact: Petitioner is the owner of the subject property that is located within city limits; the allegations of the city's complaint are true; the building is a dangerous and abandoned building within the provisions of PCC Chapter 24.

The hearings officer elaborated on three items of concern:

(1) "[T]he structure is open to entry. Especially being immediately adjacent to a school, [it] presents an attractive nuisance and hazard to children. * * * The dangers are probably not fatal to any kid, but there is certainly a possibility of serious or substantial injury."

(2) "[T]he walls have all been stripped down, which means, of course, that natural firestops have been removed. If a fire were to break out in the structure, the spread of fire would be rather hot and fast, which would present a hazard to any children, trespassers, who may have

started the fire, to any emergency personnel who would be required to come onto the property to deal with the fire, and, of course, any occupants of adjacent buildings."

(3) "[T]he large amounts of debris which are present within the interior of the structure, again, accelerate or amplify the fire risks which are present in the structure which would, again, add to the intensity and danger of any flame which could break out."

The hearings officer then concluded:

"I think we will take this one down. [Petitioners] will be ordered to apply for and obtain an appropriate demolition permit and to completely demolish the structure and return the site to a clean and level condition not later than October 1st, 1988. In the event [petitioners] fail, omit, or neglect to do so, the City of Portland is authorized and directed, pursuant to the provisions of 24.55.300 of the City Code, to undertake the demolition at [petitioner's] cost and expense. [Petitioner] will be liable for the City's costs of demolition, and if not paid, the same will be [made] a lien against the property."

The final order, dated September 9, 1988, incorporated by reference the hearings officer's oral findings of fact and conclusions of law. Petitioner did not apply for a demolition permit and took no other action. The city subsequently demolished the building and placed a lien on the property for demolition costs, including overhead and administrative expenses.[1]

Pursuant to ORS 34.030, petitioner filed in Multnomah County Circuit Court a petition for writ of review of the city's decision. The circuit court denied the writ. The Court of Appeals affirmed without opinion. *Lincoln Loan Co. v. City of Portland*, 107 Or App 784, 813 P2d 1139 (1991). We allowed review to determine whether the findings made by the city's hearings officer in this case were sufficient to permit the city to demolish a vacant residential structure that had been found to create a nuisance and to charge the owner for the costs of demolition.

---

[1] Petitioner remains liable for the costs of destruction. This financial obligation prevents this case from being moot.

A writ of review is a special statutory proceeding. ORS 34.010 *et seq; Brooks v. Dierker,* 275 Or 619, 625, 552 P2d 533 (1976).[2] A writ of review

"shall be allowed in all cases where the inferior court including a district court, officer, or tribunal, * * * in the exercise of judicial or quasi-judicial functions appears to have:

"(1)    Exceeded its jurisdiction;

"(2)    Failed to follow the procedure applicable to the matter before it;

"(3)    Made a finding or order[3] not supported by substantial evidence in the whole record;

"(4)    Improperly construed the applicable law; or

"(5)    Rendered a decision that is unconstitutional,

"to the injury of *some substantial interest of the plaintiff* * * *." ORS 34.040.

In its petition for writ of review, petitioner alleged that, in ordering that the building be demolished, the city's hearings officer erred in four of the five ways specified in ORS 34.040. Petitioner alleged that the hearings officer failed to follow the procedure applicable to the matter before it (ORS 34.040(2)), that the September 9, 1988, order to demolish the building was not supported by substantial evidence in the record (ORS 34.040(3)), that the hearings officer improperly construed applicable law (ORS 34.040(4)), and that the hearings officer rendered a decision that is unconstitutional (ORS

---

[2] In a writ of review proceeding, "the cause is tried upon the return to the writ, which consists of a duly authenticated copy of the record of the inferior court, officer, or tribunal." *Curran v. State,* 53 Or 154, 159, 99 P 420 (1909). The circuit court confines its review to the record of the inferior tribunal; it does not take new evidence and does not pass on questions of fact. *Alt v. City of Salem,* 306 Or 80, 84, 756 P2d 637 (1988); *Bechtold et al v. Wilson et al,* 182 Or 360, 366, 186 P2d 525, 187 P2d 675 (1947). "The writ of review * * * is substantially the common-law remedy by *certiorari." Curran v. State, supra,* 53 Or at 158.

" 'The office of the petition [for a writ of *certiorari*] is to bring to the notice of the court the grounds upon which the party seeks relief from the judgment or execution complained of, and to obtain the writ prayed for.' " *Curran v. State, supra,* 53 Or at 158-59 (quoting *McDowell v. Turney,* 37 Tenn 107, 108-09 (5 Sneed) (1857)).

The petition must set forth the errors alleged to have been committed by the inferior court, officer, or tribunal. ORS 34.030.

[3] The reference to an "order" in this provision is somewhat misleading. Only *findings* can be directly supported by substantial evidence. *Orders* are supported by findings (and, therefore, are supported only indirectly by substantial evidence).

34.040(5)). It is necessary to address only the third contention, that the hearings officer improperly construed applicable law, in order to resolve this case.[4]

PCC 22.05.010(a) sets forth the range of actions that the hearings officer may order:

"(a) The Code Hearings Officer shall order a party found in violation of the Code of the City of Portland to comply with the provisions of the Code within such time as the Code Hearings officer may by order allow. * * * [T]he order may require such party to do any and all of the following.

"(1) Make any and all necessary repairs, modifications, and/or improvements to the structure, real property, or equipment involved;

"(2) Abate or remove any nuisance;

"(3) Change the use of the building, structure, or real property involved;

"(4) Install any equipment necessary to achieve compliance;

"(5) Pay to the City of Portland a civil penalty * * *;

"(6) Undertake any other action reasonably necessary to correct the violation."

Underlying each of petitioner's claims is the assertion that the extreme measure of demolition may be ordered only if a nuisance cannot be abated by less severe means.[5] The hearings officer, in ordering demolition, did not make a finding that demolition was a reasonable choice of remedy among the methods available to abate the nuisance. PCC 22.03.110(b) expressly requires the hearings officer to make findings of fact and conclusions of law as part of any order. PCC 22.03.110(b) provides:

---

[4] The validity of petitioner's other arguments will be affected by the disposition of this case on remand in the light of this opinion. They can be addressed at later stages as necessary.

[5] PCC 22.05.010(b)(2) provides, with respect to *occupied* residential structures, that the hearings officer cannot order demolition unless it "reasonably appears that measures other than vacation or demolition of the building or structure would be inadequate to protect the health, safety, or property of the general public." There is no similar provision expressly limiting a hearings officer's authority to order demolition of a vacant residential structure.

"A final order *shall* be accompanied by findings of fact and conclusions of law. The findings of fact *shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the Code Hearings Officer's order*." (Emphasis added.)[6]

The issue in this case, therefore, is whether the hearings officer improperly construed the applicable law in failing to make such a finding, *viz.*, whether PCC 22.05.010(a), in conjunction with PCC 22.03.110(b), requires a finding of the kind for which petitioner contends.

■■■ Determination of the meaning of a statute is one of law for the court. *Tee v. Albertsons, Inc.*, 314 Or 633, 638, 842 P2d 374 (1992). The same rules that govern the construction of statutes apply to the construction of municipal ordinances. *Lane County v. Heintz Const. Co. et al*, 228 Or 152, 157, 364 P2d 627 (1961). We start with the text of the municipal ordinance. *See State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 174, 818 P2d 1270 (1991) (stating rule with respect to statutes). The context of the language of the municipal ordinance also may be considered, and, if the intent is clear based on the text and context of the municipal ordinance, the court does not go further. *See Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 378 & 379 n 5, 851 P2d 595 (1993) (so stating with respect to ballot measure; stating that same rule applies to interpreting statutes).

---

[6] This provision is identical to the provision applicable to state agencies in ORS 183.470(2). This court previously has emphasized the necessity that a quasi-judicial tribunal clearly and precisely state what it finds to be the relevant facts and why those facts rationally lead to the decision that it makes. In *Sunnyside Neighborhood v. Clackamas Co. Comm.*, 280 Or 3, 21, 569 P2d 1063 (1977), a writ of review proceeding, this court stated:

"We wish to make it clear that by insisting on adequate findings of fact we are not simply imposing legalistic notions of proper form, or setting an empty exercise for local governments to follow. No particular form is required, and no magic words need be employed. What is needed for adequate judicial review is a clear statement of what, specifically, the decision-making body believes, after hearing and considering all the evidence, to be the relevant and important facts upon which its decision is based. Conclusions are not sufficient."

*See also Williams v. SAIF*, 310 Or 320, 329, 797 P2d 1036 (1990) (Unis, J., specially concurring) (discussion of "practical reasons for [statutory] requirement * * * that an administrative agency state its factual findings and articulate a rational connection between the facts it finds and the legal conclusions it draws from them").

■ Under PCC 22.05.010(a), the hearings officer has the power to order that a nuisance be removed, a power that was exercised in this case by ordering the demolition of a building. The power to order the demolition of a building can be construed in one of two ways. The power can be construed as an absolute power with no limitations so that, once a building is found to present a nuisance, it can be demolished at the discretion of the hearings officer, exercised arbitrarily or otherwise. We believe, however, that the more reasonable reading of the power of the hearings officer requires that the power be limited to situations in which it appears that, given the range of actions that might be taken in the particular case, the action chosen by the hearings officer is a reasonable one.

In this case, the hearings officer made findings that petitioner is the owner of the subject property located in Portland, that the property is developed with a single-story, wood frame residential dwelling, and that the building is a dangerous and abandoned building within the provisions of PCC Chapter 24. The hearings officer then concluded, "I think we'll take this one down," but made no finding as to why demolition was a reasonable choice among the methods available to correct the violation. We hold that the hearings officer misconstrued his authority under PCC 22.05.010(a) by ordering that petitioner's building be demolished without first having made any finding as to why demolition was appropriate.

Because the hearings officer improperly construed the applicable law, it was error for the circuit court to deny the writ if it appears that improperly construing the applicable law was "to the injury of some substantial interest of the plaintiff." ORS 34.040. Making that determination, and fashioning an appropriate remedy under ORS 34.100[7] in the light of that determination, are functions best performed in the first instance by the circuit court.

---

[7] ORS 34.100 provides:

"Upon the review, the court shall have power to affirm, modify, reverse or annul the decision or determination reviewed, and if necessary, to award restitution to the plaintiff, or to direct the inferior court, officer, or tribunal to proceed in the matter reviewed according to its decision. From the judgment of the circuit court on review, an appeal may be taken in like manner and with like effect as from a judgment of a circuit court in an action."

If the circuit court determines that the evidence in the record is sufficient to support a finding that demolition was a reasonable choice among the methods available to correct the violations, the case will need to be remanded to the hearings officer to make a further finding. The hearings officer's decision, based on the proper construction of applicable law, would then be subject to any challenges that plaintiff may bring to the circuit court and on review to this court.

If, however, the circuit court determines that the evidence in the record is not sufficient to support a finding that demolition was a reasonable choice among the methods available to correct the violations, then the failure properly to construe the applicable law, resulting in the improper demolition of plaintiff's building, was to the injury of a substantial interest of plaintiff, and the circuit court will need to fashion an appropriate remedy. The circuit court's decision would then be subject to review by this court.

The decision of the Court of Appeals and the judgment of the circuit court are reversed. This case is remanded to the circuit court for further proceedings consistent with this opinion.