Argued and submitted August 23, affirmed November 23, 2001

NEIGHBORS FOR LIVABILITY,
Susan Cook, Robert Beard, Maura Malone,
Mark John Holady, Monica Holady, and Marvin Doty,
*Petitioners,*

*v.*

CITY OF BEAVERTON,
Sorrento Construction/Briar Development Company,
Steve W. Sanders, Sharon I. Inselman, Tom Gilroy,
Jane Athanasakos, Nancy Pletz, Sharon Dunham,
Kevin W. Teller, Paul Franich, Anne Fahlbusch,
and Marie Barzen,
*Respondents.*

2000-201, 2000-202, 2000-203; A114637

35 P3d 1122

Jeffrey L. Kleinman argued the cause and filed the brief for petitioners.

Mark E. Pilliod argued the cause for respondent City of Beaverton. Jack L. Orchard argued the cause for respondent Sorrento Construction/Briar Development Company. With them on the brief was Ball Janik LLP.

Steven W. Sanders waived appearance for respondents Steve W. Sanders, Sharon I. Inselman, Tom Gilroy, Jane Athanasakos, Nancy Pletz, Sharon Dunham, Kevin W. Teller, Paul Franich, Anne Fahlbusch, and Marie Barzen.

Before Linder, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

## DEITS, C. J.

Petitioners seek review of a Land Use Board of Appeals (LUBA) final opinion and order affirming a City of Beaverton zoning map amendment for an approximately 10-acre parcel. The city applied its Community Service (CS) zone to the property in place of the previous Urban Standard Density Residential (R-5) zone. The CS zone is one of six commercial zones used by the city. Petitioners claim that LUBA's affirmance of the city's rezoning decision was unlawful in substance and should be reversed. We affirm.

The basic facts are not in dispute. We take them from LUBA's opinion on review and from the city's findings and order approving the zone change. The subject property lies along Murray Boulevard, a five-lane regional corridor. Before 1999, the site and additional property to the south were designated for single-family residential use in the city's comprehensive plan. In 1999, the city changed the overall plan designation for the property from residential to commercial; a prior LUBA decision dealt with the city's plan map change. We reviewed that decision and remanded it for reasons that are not relevant to this review proceeding. *Neighbors for Livability v. City of Beaverton*, 168 Or App 501, 4 P3d 765 (2000).

Sorrento Construction (Sorrento), applicant below and one of the respondents on review, asked the city planning commission to change the applicable zone designation from R-5 to CS in order to facilitate the use of the subject property for a grocery store and pharmacy. Sorrento also sought approval of a conditional use permit for a planned unit development for the subject property and for property to the south. Those approvals would allow the commercial site and a multiple-family residential site to be developed as an integrated whole. The city planning commission approved those applications.

Petitioners appealed the approvals to the city. The city denied petitioners' appeal and adopted Ordinance Number 4132, amending the city's zoning map to provide for CS zoning on the subject 10-acre parcel. Petitioners then appealed the rezoning decision to LUBA. LUBA affirmed the

city's rezoning decision, and petitioners now seek our review of LUBA's decision.

In their first assignment of error, petitioners assert that LUBA erred in affirming the city's application of the CS zone to the subject property. They complain that the city made "interpretations that are clearly wrong; misconstrued the applicable law; and acted in violation of its own comprehensive plan" when it rezoned the property. Beaverton Development Code 40.90.15.2.C.1 provides that an applicant for a quasi-judicial zoning map amendment must demonstrate that:

"a. The proposal conforms with the City's Comprehensive Plan.

"b. The proposal complies with all applicable statutory and ordinance requirements and regulations."

Petitioners argue that the rezoning does not comply with the intent of the CS designation as specified in the Beaverton Comprehensive Plan (BCP) 3.5.4. BCP 3.5.4 states:

"The Community Service Designation is intended to recognize existing commercial activity found principally along Beaverton Hillsdale Highway, Canyon Road, Tualatin Valley Highway, Cedar Hills Boulevard, and Highway 217. As a result of our auto-dependent suburban development pattern, Beaverton has significant strip development along these travelways. This has created both functional and aesthetic problems. Functional problems arise because strip development interrupts the traffic flow as cars turn in and out of each business, impairing the overall efficiency and safety of the transportation system. Aesthetic issues arise related to signs, building relationships, merchandise display, etc.; competing for attention.

"Highway development does provide a means for business activity and service to the public. However, this type of development pattern should be limited to existing areas and not allowed to occur along other arterials."

Petitioners challenge the city's and LUBA's interpretation of BCP 3.5.4 on a number of grounds. The premise underlying their contentions, however, is that the language of BCP 3.5.4 lends itself to only one interpretation: namely, that the CS zone may be used only to recognize and permit

expansion of existing strip development and, further, that strip development may occur only in the specific locations identified in BCP 3.5.4.[1] The proposal at issue here is for a grocery store and pharmacy, uses that, according to petitioners, do not fit within the scope of the CS designation as articulated in BCP 3.5.4. Petitioners assert that, if additional uses are to be allowed under the CS designation, the comprehensive plan must be amended.

The city addressed petitioners' understanding of the comprehensive plan and specifically rejected it. The city explained:

"[T]he intent of this portion of [BCP 3.5.4] is simply to recognize that undesirable forms of development have occurred in certain parts of the City and that these areas should be zoned CS. However, [BCP 3.5.4] does not say and does not mean that no other areas may be zoned CS. On the contrary, [BCP 3.5.4] states that a certain 'type of development pattern'—*i.e.*, 'highway development' (which the Council finds to be synonymous with 'strip development')— should not be allowed to occur along arterials other than the travelways listed in [BCP 3.5.4]. The Council finds that CS zoning may be used along arterials other than the travelways listed in [BCP 3.5.4] as long as the resulting development does not constitute 'highway' or 'strip' development."

The city characterized the CS zone as the least intensive of the city's commercial zones. It opined that precluding use of the CS zone on arterials other than those listed in BCP 3.5.4

"would likely result in sites with a Commercial comprehensive plan designation being put to more intensive commercial use than would naturally occur (with greater impacts on adjoining residential uses). * * * As long as those establishments do not take the form of 'strip' development or contribute to such a development pattern, it would be a considerable disservice to City residents to preclude development

---

[1] The city's findings note in more than one instance that "strip" or "highway" development and "strip commercial" are terms not defined in the comprehensive plan or development code. The city determined, however, that such development is development that causes the functional or aesthetic problems identified in BCP 3.5.4. Petitioners do not challenge that determination on review.

of such establishments on arterials other than the travelways listed in [BCP 3.5.4] by precluding use of the CS [designation] on those arterials."

LUBA held that, although the city council "could reasonably interpret BCP 3.5.4 to permit the CS designation to be used only to recognize strip commercial development," under LUBA's proper standard of review that was not the question it must answer. LUBA explained that, under its deferential standard of review of the city's decision, it could not say that the city's interpretation was inconsistent with the text and context of the applicable provisions. LUBA noted that it is unusual to have a two-paragraph, generally worded purpose statement establish the precise criteria for a particular type of zoning designation and that it is even more unusual to create a zoning designation that can be applied only to lands already in strip commercial development. LUBA concluded that it could not say that the city exceeded its discretion under ORS 197.829(1) and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), and rejected petitioners' understanding of the policy statement in BCP 3.5.4.

■ We agree with LUBA's determination. LUBA and the courts must affirm a local government's interpretation of its own ordinance unless LUBA or we determine that the local government's interpretation is inconsistent with the express language of the ordinance, considered in its context, or with the apparent purpose or policy of the ordinance. ORS 197.829(1); *Clark*, 313 Or at 515. The city's view that the CS designation can be applied to arterials other than those identified in the purpose statement if the resulting development does not constitute "growth or strip development" is not inconsistent with the text and context of BCP 3.5.4. The text of BCP 3.5.4 does state that the CS designation is "intended to recognize existing commercial activity." There is, however, nothing in that provision that states that the CS designation is limited to such uses or that other uses are not permitted. Although, as LUBA and the parties recognize, the text of BCP 3.5.4 is not a model of clarity, the city's reading of it cannot be said to be inconsistent with the text.

Further, the context of BCP 3.5.4 supports the city's interpretation. Certain plan policies address the city's commercial zones, and the CS zone particularly, in terms that

suggest that the CS zone may be applied to facilitate new uses. For example, BCP 3.5.8 includes policies for "all" commercial designations and states again that "[n]o new strip commercial developments should be established in the planning area." BCP 3.5.8.1(c). BCP 3.5.8.3 sets out "Community Service Designation Policies" and again states that the highway-type development pattern should be limited to existing areas and not allowed to expand. However, that policy also calls for the adoption of measures limiting access and establishing special aesthetic and functional controls for highway uses located next to a residential designation. It further states that uses in the CS designation should conduct business mostly within enclosed buildings. In other words, the policy seeks to limit the negative effects generated by strip commercial uses, but in doing so the policy also affirms use of the CS zone for uses that promote the policies in BCP 3.5.8.3. That affirmation is expressly stated in BCP 3.5.8.3(d), which provides that a

> "variety of commercial uses should be encouraged so long as the scale does not ultimately detract from the high intensity goals for the CBD [central business district] and other designated areas within the community."

Were the city to have intended the CS zone to apply only to areas already "strip" developed, there would be little reason to include policies designed to limit the effects of the uses while encouraging a "variety of commercial uses" when they are of appropriate scale. Here, the city's interpretation is well grounded in the text and context of the policies governing the CS zone. *Huntzicker v. Washington County*, 141 Or App 257, 260-62, 917 P2d 1051, *rev den* 324 Or 322 (1996). We conclude that LUBA did not err in upholding the city's interpretation of BCP 3.5.4.

Petitioners' second assignment of error concerns the city's actions regarding danger from potentially hazardous substances that were placed on the property at a time when it was used as a construction debris landfill. Petitioners focus in particular on the potential presence of methane gas. They argue that LUBA erred in concluding that the city's decision concerning the presence of these substances did not violate BCP 3.4.2.1, 3.4.2.11, and 3.5.7.3.[2] BCP 3.4.2.1 provides:

___

[2] Petitioners also argue that LUBA erred in concluding that the city's decision violated Statewide Planning Goal 6, the "Air, Water and Land Resources Quality"

"The primary focus of residential development should be towards maintaining or creating maximum livability and promoting quality living areas."

BCP 3.4.2.11 provides:

"Various residential uses should be protected from the intrusion of incompatible uses in order to preserve and stabilize values and the character of the area."

BCP 3.5.7.3 provides:

"Commercial activity should be directed into areas where it can develop harmoniously with the rest of the community."

The city concluded that those BCP policies were not violated because, although there were some soil contaminates on the property, including methane, the city found that the quantities of methane gas on the property "are not sufficient to cause problems. However, if problems arise, there are proven methods to deal with them." The city found that methane concentrations are to be monitored "before, during and after construction," and the city imposed conditions to ensure that such monitoring would occur. The conditions provide that, if the city engineer determines that additional study by an independent engineer is warranted, the city may retain an engineer to study the matter and recommend additional design and mitigation measures. The city also provided for incorporation of those recommendations as conditions of the site development permit.

■ Petitioners' argument under this assignment of error includes both evidentiary and legal components. We begin by addressing petitioners' evidentiary argument. Petitioners assert that the city found that no hazard exists and that, if a hazard is found to exist, it can be mitigated. According to petitioners, those findings are not supported by substantial evidence. We may reverse or remand a LUBA order if it is not supported by substantial evidence. ORS

goal. OAR 660-015-0000(6). The purpose of Goal 6 is "[t]o maintain and improve the quality of the air, water and land resources of the state." On review, petitioners do not offer an argument to support their allegation that Goal 6 was violated, nor do they explain the legal basis for the goal's applicability to the city's decision. Therefore, we do not address Goal 6 or LUBA's resolution of petitioners' claim that the goal was violated.

197.850(9)(c). The city relied on the report of a geotechnical engineering firm. The city also noted that the testimony introduced by the opponents of the project did not indicate that potential hazards from methane could not be mitigated. Petitioners do not persuade us that LUBA used the wrong standard of review or failed to consider all of the evidence in reviewing the city's decision. There is no question that LUBA reviewed the record and concluded that a reasonable person could agree with the city, based on the engineering firm's report, that whatever hazard might exist can be adequately mitigated. The fact that petitioners might draw different conclusions does not mean that LUBA failed to apply the substantial evidence test correctly. *See Younger v. City of Portland*, 305 Or 346, 359-61, 752 P2d 262 (1988); *Cusma v. City of Oregon City*, 92 Or App 1, 6-7, 757 P2d 433 (1988).

■    Petitioners' legal arguments concern two conditions of approval included in an earlier city Board of Design Review decision. The first condition required that Sorrento submit a detailed geotechnical report before the city's issuance of a site development permit. The second condition provided that, if circumstances warranted, the city engineer was authorized to retain an engineer who might recommend additional design and mitigation measures. That condition also provided that the city could incorporate the recommended measures in the site development permit. Petitioners argued to LUBA, and argue here, that those conditions improperly allow discretionary decision-making to occur at the site development proceeding, a proceeding for which the municipal code provides no public hearing. They also contend that the city may not find that the conditions imposed will successfully mitigate any hazards without first knowing the nature of the hazard, the mitigation measures that will be employed, and the possible effects of employing those measures. In other words, petitioners do not agree with the city's and LUBA's view that the city may demonstrate compliance with applicable comprehensive plan criteria by imposing conditions that call for further study and the use of the site development proceeding, a proceeding for which the municipal code provides no public hearing. For petitioners, unless the results of the study and the mitigation measures are

known and subject to scrutiny at a public hearing, the city has not shown compliance with its comprehensive plan.

LUBA rejected petitioners' argument that the conditions were improper because the conditions allow a decision to be made at a proceeding at which no public hearing is provided. LUBA said that petitioners failed to explain why a public hearing would be required. LUBA cited its own decision in *Rhyne v. Multnomah County*, 23 Or LUBA 442, 447 (1992), which relied on our decision in *Meyer v. City of Portland*, 67 Or App 274, 678 P2d 741, *rev den* 297 Or 82 (1984), for the proposition that, as long as a local government finds compliance or feasibility of compliance with applicable criteria at a stage of the process in which public hearing requirements are observed, it is appropriate to impose conditions of approval to ensure that those criteria are met. Further, LUBA held that compliance with those conditions may be deferred to a stage of the proceeding at which additional public hearings are not required. *See Meyer*, 67 Or App at 280 n 5, 282 n 6.

We agree with LUBA. We review LUBA's legal conclusions to ascertain if they are "unlawful in substance," that is, if LUBA's opinion represents a mistake of law. *See* ORS 197.850(9)(a); *Gage v. City of Portland*, 319 Or 308, 317, 877 P2d 1187 (1994). Petitioners cite nothing in the city's land use controls or in the applicable law prohibiting the city's approach. Petitioners do not offer a convincing reason to conclude that it was legally unacceptable. Here, the city: (1) found that no hazard exists; (2) required further consideration of the hazard issue to ensure that no potential hazard goes unnoticed; and (3) established conditions requiring that any discovered hazard be mitigated. The available authority supports the city's approach. *See Meyer*, 67 Or App at 281-82, 282 n 6. Were we to adopt petitioners' view, a local government faced with facts similar to those here would be forced to require extensive studies before permitting, even conditionally, a proposed development that *might* uncover a natural or other hazard. Provided that the local government includes safeguards in its decision to mitigate any hazards that might arise during the course of development, we see no legal basis for requiring the certainty that petitioners' argument

demands. For the above reasons, we conclude that LUBA's decision should be affirmed.

Affirmed.