Argued and submitted January 29, affirmed May 15, 2003

Charles T. CHURCH
and Philip L. Gerstner,
*Respondents,*

*v.*

GRANT COUNTY,
*Petitioner.*

2002-061; A119996

69 P3d 759

John M. Junkin argued the cause for petitioner. With him on the brief were Lisa E. Lear and Bullivant Houser Bailey PC.

Robert S. Lovlien argued the cause for respondents. With him on the brief was Bryant, Lovlien & Jarvis, P.C.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.

DEITS, C. J.

**DEITS, C. J.**

Petitioner Grant County seeks review of an order of the Land Use Board of Appeals (LUBA) reversing a Grant County Court[1] decision denying a permit to place a single-family dwelling on a five-acre parcel zoned Rural Residential (RR). The RR zone has a 10-acre minimum lot size. We affirm.

We take the relevant facts from LUBA's opinion on review, and from its decision in an earlier related proceeding, *Church v. Grant County*, 37 Or LUBA 646 (2000). In 1997, petitioners below, Charles T. Church and Philip L. Gerstner (applicants), sought to partition a 22-acre parcel into three parcels, of which two were five acres and one was 12 acres. The county administratively approved the divisions, notwithstanding the fact that two of the parcels did not conform to the minimum 10-acre parcel size in the "RR-10" zone.

In 1998, applicants requested the county's approval to partition the 12-acre parcel into two parcels of five and seven acres. The county administratively approved the request, again notwithstanding the 10-acre minimum lot size applicable in the zone. Later that year, the county discovered its errors and adopted an ordinance, ordinance 98-03, allowing it to revoke any final land use decision that the county determined violated clear and objective code standards. Relying on Grant County Land Development Code (LDC) 13.010, the county revoked both partitions of applicants' property. Applicants sought review of the county's decision before LUBA. LUBA reversed the county's decision, holding that the revocation of the 1997 and 1998 partitioning decisions was prohibited as a matter of law, citing ORS 92.285, which prohibits the adoption of retroactive ordinances. *Church*, 37 Or LUBA at 652.

Following LUBA's decision, applicants sought administrative approval by the county of a single-family dwelling on the five-acre parcel created by the 1998 partitioning of the 12-acre parcel. The planning director referred the

---

[1] Grant County has not adopted the county commission form of government, but retains the county court structure. *See* ORS 203.230.

matter to the planning commission, which denied the application. Applicants then took the matter to the county court, which affirmed the denial. Applicants again sought review before LUBA. In *Church v. Grant County*, 40 Or LUBA 522, 530 (2001), LUBA concluded that the county's interpretation of LDC 13.010 was erroneous and not sustainable under ORS 197.829(1). However, LUBA remanded the decision to the county rather than reversing it because it concluded that the meaning of and relationship between the provisions of the county code were unclear and it could not say that there was no sustainable interpretation that would support a county decision to deny petitioners' application.

On remand, the county determined that LDC 13.010 did not apply at all to applicants' application. It then denied the application because it concluded that LDC 13.010 was the only asserted basis to support applicants' right to construct the proposed dwelling on a five-acre parcel in a zone requiring a 10-acre minimum lot size. Applicants sought review by LUBA yet again. LUBA reversed the county's decision, concluding that the county's denial of permission to build the dwelling on the five-acre parcel was based on an impermissible interpretation of the county's ordinance and was prohibited as a matter of law. *Church v. Grant County*, 43 Or LUBA 291, 299 (2002).

The county now seeks our review of LUBA's decision. The county argues that LUBA erred in invalidating its interpretation of the county ordinance and its consequent holding that applicants may not build a single-family dwelling on the subject parcel.

Applicants respond, as they argued before the county, that their application comes within the exceptions to the minimum lot-size requirement found in LDC 13.010. That ordinance is entitled "Non-Conforming Lots or Parcels" and provides:

"A. The minimum area or width requirements shall not apply to an *authorized lot as defined in Section 11.030 of this Code*. An authorized lot may be occupied by any use permitted in the applicable Zone subject to all other standards of this Code.

"B.    No lot area, yard or other open space, existing on or after the effective date of this Code, shall be reduced in area, dimension or size below the minimum required by this Code.

"C.    The general lot size or width requirements of this Code shall not apply when a portion of a tax lot under single ownership, in an area excepted from Statewide Planning Goals, is isolated from the remainder of the property by a public road.

"D.    Lots which were legally created prior to January 1, 1985, and which do not meet the current minimum frontage, lot width or lot sizes required for the Zone, are deemed acceptable for development."

(Emphasis added.) Applicants argue that the proposed dwelling should be allowed under LDC 13.010(A) as an "authorized lot." Under that subsection, an "authorized lot as defined in Section 11.030" of the code is not subject to minimum area or width requirements. LDC 11.030(176) defines an "authorized lot" as a separate unit of land created by, among other acts, "a land partitioning as defined in ORS 92.010." It is undisputed that the lot that is the subject of this dispute would come within that definition.

As noted above, however, in its latest decision, the county determined that LDC 13.010 was not applicable in this case. The county reached that conclusion by reading the text of LDC 13.010(A) together with the title of the code section—"Non-Conforming Lots or Parcels." The county reads the title of this code section as qualifying or limiting the term "authorized use." LUBA accurately summarized the county's interpretation of its code:

"In short, the county's decision reasons that, because the title of LDC 13.010 refers to 'nonconforming lots or parcels,' the text of LDC 13.010(A) is concerned *only* with 'nonconforming lots' as that term is defined, and limited, in the LDC."

*Church*, 43 Or LUBA at 298 (emphasis in original). No one disputes that the parcel at issue here is not a "nonconforming lot" as defined in the code.[2] The county then reasoned that,

---

[2] A nonconforming lot or structure is defined as one that "lawfully existed prior to the adoption of this Code, but which does not meet the standards for lot area,

because the parcel here was not a "nonconforming lot," it could not be an "authorized lot."

As discussed above, LUBA concluded that the county's interpretation of its code was inconsistent with the express language of the code and, therefore, the county's interpretation was impermissible as a matter of law. LUBA explained that the county's reading of its code gives no independent meaning to the term "authorized lot." LUBA reasoned that the county's interpretation effectively equated the term "authorized lot" with the term "nonconforming lot," eliminating "authorized lot," a term that the code specifically defines, from any function under the code.

On review to this court, the county argues that, for a number of reasons, LUBA erred in holding the county's interpretation to be impermissible. First, the county asserts that LUBA failed to give proper deference to the county's interpretation of its code. Citing *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), and our cases applying *Clark*, the county argues that LUBA failed to consider the context in which LDC 13.010(A) appears and, in so doing, failed to correctly conclude that LDC 13.010(A) applies only to nonconforming lots, that is, lots meeting the code's definition of "nonconforming." The county contends that the subject parcel is not nonconforming because it was created after 1997 and that LDC 13.010(A) therefore does not apply. As a result, according to the county, applicants are not entitled to construct a dwelling on the substandard lot created by the 1998 partition. It is further the county's position, relying on *Clark*, that LUBA was "required" to affirm the county's ruling unless the ruling was inconsistent with the express language of the code or its apparent purpose or policy.

■    The county is correct that, under *Clark*, review by LUBA and this court of a local government's interpretation of its own ordinance is limited. As we stated in *Neighbors for Livability v. City of Beaverton*, 178 Or App 185, 190, 35 P3d 1122 (2001):

dimension, setbacks, or other criteria in this Code." LDC 11.030(209). The county held that the reference to "this Code" is to the LDC, which was adopted in 1997. Because the parcel that is the subject of this dispute was created after 1997, the county concluded that it was not a "nonconforming" lot or parcel.

> "LUBA and the courts must affirm a local government's interpretation of its own ordinance unless LUBA or we determine that the local government's interpretation is inconsistent with the express language of the ordinance, considered in its context, or with the apparent purpose or policy of the ordinance."

As the county points out, we have consistently applied that limited standard of review in many cases since *Clark*.

We continue to believe that that standard of review is mandated by *Clark*. We note, however, that we have summarized that standard of review as requiring that a local government's interpretation of its code is not reversible unless it is "clearly wrong." *Schwerdt v. City of Corvallis*, 163 Or App 211, 218, 987 P2d 1243 (1999); *Goose Hollow Foothills League v. City of Portland*, 117 Or App 211, 217, 843 P2d 992 (1992). We now conclude that that shorthand summary of the standard of review is not precisely consistent with *Clark*. The specific language from *Clark* describing the proper scope of review is that "LUBA is to affirm the county's interpretation of its own ordinance unless LUBA determines that the county's interpretation is inconsistent with express language of the ordinance or its apparent purpose or policy." 313 Or at 515. To the extent our summary description of the standard of review under *Clark* suggests that LUBA must sustain all but the most unreasonable interpretations of local land use controls, that description is inaccurate. The legitimacy of an interpretation of a local plan and ordinance provision depends on its consistency with the terms of the provision, the context of the provision, and the purpose or policy behind the provision. Conversely, the validity of the interpretation is not determined solely by the reasonableness of an argument created to support it. The *Clark* decision and ORS 197.850(9), which was enacted after *Clark*, are more correctly characterized as consistent with the rules of construction announced in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993).

That understanding is also consistent with ORS 197.829, which governs LUBA's standard of review.[3] That

---

[3] ORS 197.829(1) provides:

provision requires LUBA to affirm a local government interpretation of its comprehensive plan and land use regulations unless LUBA determines that the interpretation is inconsistent with the express language of the plan or regulation, is inconsistent with the purpose of the plan or regulation, is inconsistent with the underlying policy providing the basis for the plan or regulation, or is "contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements." ORS 197.829(1)(d).

■    Applying the proper standard of review here, we conclude that LUBA did not err in its conclusion that the county's interpretation of its ordinance was legally impermissible and, therefore, not entitled to deference. As we will discuss, we also conclude that the county's interpretation of its code is inconsistent with the text of the ordinance considered in its context and is inconsistent with the apparent purpose of the ordinance.

■    Looking first at the text, LDC 13.010(A) specifically provides that the county's minimum area or width requirements shall not apply to an "authorized lot as defined in Section 11.030." As noted above, under that definition, an "authorized lot" includes, among other things, a separate unit of land created by a "land partitioning." There is no question that that definition includes the property at issue here, which was created by a partition. The county acknowledges that, under that text of the ordinance, the applicants' parcel is an "authorized lot." The county, however, argues that the term "authorized lot" must be read in its context. That context, according to the county, includes the title of LDC 13.010, "Non-Conforming Lots or Parcels." The county

---

"[LUBA] shall affirm a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpretation:

"(a) Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(b) Is inconsistent with the purpose for the comprehensive plan or land use regulation;

"(c) Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or

"(d) Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements."

asserts that the title *implicitly* amends the meaning of "authorized lot" to include only authorized lots that are also nonconforming lots. In other words, under the county's interpretation, the exception for authorized lots in LDC 13.010(A) applies only to authorized lots created before 1997. We agree with LUBA that it is impermissible to read into an unambiguous and directly relevant definition of a term in an ordinance a requirement that the ordinance simply does not contain.[4]

That conclusion is also supported by the context of the provision. In LDC 13.010(D), the county allows nonconforming lots legally created before January 1, 1985, to be developed without meeting lot size requirements. It is apparent from that provision that the county knows how to include time restrictions on the availability of exceptions to minimum area requirements. Had the county intended to restrict the exception for "authorized lots" in subsection (A) to lots created after 1997 (which would be the effect of its reading of this code provision), it could have easily done so by including a limiting date in LDC 13.010(A).

Finally, the evident policy behind the exceptions for nonconforming lots or parcels and authorized lots in LDC 13.010 is to provide a means by which landowners who had an apparent right to develop their property at one time might retain that right following enactment of conflicting county development regulations. The county's interpretation, which would limit the exception and allow its application to only some parcels meeting the definition of an "authorized lot," would not carry out that purpose.

---

[4] In the context of statutory construction, a statute's caption is of no legal significance. *See* ORS 174.540; *Exchange Properties, Inc. v. Crook County,* 164 Or App 517, 520, 992 P2d 486 (1999). That is because the caption is added after enactment by Legislative Counsel for the reader's convenience; the caption is not something that is within the contemplation of the legislature that enacted the statute. *Id.* Applicants urge us to consider the title of Article 13 of the county code and the title of LDC 13.010 as part of the context of LDC 13.010. Even assuming, for the sake of argument, that titles might have some bearing on the meaning of an ordinance, we note that, unless the record in a particular proceeding establishes that the titles were part of the ordinance as enacted, it is possible that we could not properly consider them. *See Lincoln Loan Co. v. City of Portland,* 317 Or 192, 199, 855 P2d 151 (1993) (rules governing statutory construction apply to interpretation of local ordinances).

In summary, we agree with LUBA that the county's interpretation of LDC 13.010 is inconsistent with the text and context of the provision, as well as its apparent purpose. LUBA did not err in concluding that the county erred in denying applicants' building permit application.

Affirmed.