Submitted on record and briefs November 3, 2003, affirmed April 21, 2004

James JUST,
*Respondent,*

*v.*

CITY OF LEBANON,
*Petitioner,*

*and*

GILBERT LIMITED PARTNERSHIP,
*Petitioner.*

2003-043; A122516

88 P3d 307

Thomas A. McHill, and Morley, Thomas, McHill & Phillips, LLC, filed the briefs for petitioner City of Lebanon.

Edward F. Schultz and Weatherford, Thompson, Cowgill, Black & Schultz, P.C., filed the briefs for petitioner Gilbert Limited Partnership.

James P. Just, *pro se,* filed the brief for respondent.

Before Deits, Chief Judge, and Schuman, Judge, and Leeson, Judge pro tempore.

DEITS, C. J.

## DEITS, C. J.

This judicial review is one of five concerning the City of Lebanon's decisions to annex several pieces of property and to apply particular zoning designations to those properties. James Just appealed *four of the annexation and zoning deci-*sions to the Land Use Board of Appeals (LUBA), and Friends of Linn County appealed the fifth. In each of the five cases, LUBA remanded the annexation and zoning designation because it concluded that the city had failed to meet certain annexation criteria in its comprehensive plan. Although each of the city's decisions concerned a different piece of property, the challenges to LUBA's remand in each of the five review proceedings are similar.[1]

Petitioners Gilbert Limited Partnership (Gilbert) and the City of Lebanon (the city), seek review of LUBA's decision remanding the city's annexation and zoning designation of approximately 70 acres of undeveloped property. We take the relevant facts from LUBA's order. *Just v. City of Lebanon*, 45 Or LUBA 162 (2003).

> "The subject property is contiguous to the existing city limits and lies within the urban growth boundary (UGB). The property is undeveloped and consists of a grass field. The parcel is bounded on the north by Oak Street, a portion of which is also included in the annexation request. * * * The property is bordered by the Lebanon Airport to the east, the UGB to the west, and unannexed industrially-designated but largely undeveloped lots to the south."

*Id.* at 163. Linn County had zoned the property "Exclusive Farm Use, 80-acre minimum parcel size," and the Lebanon Comprehensive Plan (LCP) map designates the property "Light Industrial." *Id.* The city's annexation ordinance, how-ever, rezoned "the property to the city's Limited Industrial zoning designation." *Id.* "No development proposal was sub-mitted in conjunction with the annexation request; however,

---

[1] The other judicial reviews are as follows: *Friends of Linn County v. City of Lebanon*, 193 Or App 151, 88 P3d 322 (2004); *Just v. City of Lebanon (A122517)*, 193 Or App 132, 88 P3d 312 (2004); *Just v. City of Lebanon (A122519)*, 193 Or App 155, 88 P3d 936 (2004); *Just v. City of Lebanon (A122520)*, 193 Or App 159, 88 P3d 937 (2004).

the decision anticipates that the property will be developed with airport related storage and hangar facilities." *Id.* at 163-64.

■ ■    The city's planning commission recommended approval, the city council approved the annexation, and Just appealed the city's decision to LUBA. LUBA remanded the city's annexation decision, concluding that the proposed annexation did not comply with relevant policies in the city's comprehensive plan. LUBA also remanded the city's zoning designation, reasoning that, "because the annexation decision had to be remanded, it was appropriate to remand the zoning designation decision as well." *Id.* at 178. Gilbert and the city seek judicial review of LUBA's decision.[2]

■    In their first assignment of error, petitioners argue that LUBA erred in substituting its interpretation of the city's comprehensive plan for the city's interpretation. According to petitioners, "[t]he City's interpretation was consistent with the plain language of the ordinance and consistent with the City's plans and policies governing annexations"; therefore, LUBA and this court must defer to the city's interpretation of its own ordinance.

The policy at issue here, LCP Urbanization Element Annexation Policy 3 (Policy 3), provides that, "[u]nless otherwise approved by the city, specific development proposals shall be required for annexation requests on vacant land adjacent to the city to [e]nsure completion within a reasonable time limit in conformance with a plan approved by the city." The city, relying on the phrase "[u]nless otherwise approved," interpreted the policy to allow it to defer the submission of a specific development proposal until after the annexation. In its findings, the city explained:

---

[2] Gilbert moved to strike Just's respondent's brief on the ground that, under our reasoning in *Utsey v. Coos County*, 176 Or App 524, 32 P3d 933 (2001), *rev dismissed*, 335 Or 217 (2003), Just "lacks standing" to appear in this court because he "has not established that this annexation case will have any practical effect on his rights in any way whatsoever." We deferred our ruling on that motion until after the case had been submitted. We now deny the motion. Just, as the respondent on review, need not establish his standing. *See Just*, 193 Or App at 147 ("Based on our reasoning in *Utsey*, we conclude that Just, as *the respondent on review*, need not establish that a decision would have a practical effect on him. Only the person or persons *invoking the jurisdiction of the court* must establish that a decision would have a practical effect on him or her." (Emphasis in original.)).

"Although the City finds that the conceptual development proposal will be implemented within a reasonable time based on assurances from the applicant, the City also finds that such a proposal is unneeded. *The Comprehensive Plan provides the City with <u>discretion</u> to require specific development proposals when considering annexation of vacant land.* Therefore, the City has discretion to apply criteri[on] 8[3] if it so chooses.

"New case law regarding the types of exactions and conditions that may be placed on the annexed property makes submission of a specific development proposal unnecessary. Additionally, the Comprehensive Plan and the City zoning ordinances require[ ] review of development proposals when an actual site plan is submitted. The City believes that until the property is annexed and under City jurisdiction, conditions and mitigation requirements for future development cannot be required by the City. The City cannot force an owner to develop his property despite the submission of specific development proposals. Therefore, the City finds that a specific development proposal is not required for this annexation."

(Emphasis added; underscoring in original.)

LUBA rejected the argument that Policy 3 allows the city to approve an annexation without a specific development proposal. LUBA explained:

"The subject property is undeveloped, and no development proposal was submitted in conjunction with the annexation petition. Petitioner argues that [Policy 3] prohibits approval of annexations that are not accompanied by development proposals, unless development proposals have been already approved for the property.

"In [*Just v. City of Lebanon*, 45 Or LUBA 179 *(Just I)*], we concluded that the city's failure to require a specific

---

[3] The city's findings also include the following description of Criterion 8:

**"Criteri[on] 8:**

"States that unless otherwise approved by the City, specific development proposals shall be required for annexation request[s] on vacant land adjacent to the City to [e]nsure completion within a reasonable time limit in conformance with a plan approved by the City."

(Boldface in original.)

development proposal undermined its findings that adequate public facilities were available to serve the residential uses that would be allowed in the city's Multiple Density residential zone. In *Just I*, as here, the applicant did not present a specific development proposal in conjunction with its annexation request.

"For the reasons explained in *Just I*, we conclude that the city erred in failing to require that a specific development proposal accompany the annexation request."

*Just*, 45 Or LUBA at 170.

As indicated, in *Just I*, LUBA explained the reason that it rejected the argument that Policy 3 allows the city to approve an annexation without a specific development proposal:

"We do not agree with the city and intervenor that [Policy 3] can be fairly read to allow the city to defer submission of a specific development proposal until an unspecified future date. The city's urban growth management agreement with the county permits applicants to seek and receive specific development approval from the city, prior to annexation, provided the application complies with relevant city standards. *See* City of Lebanon/Linn County Urban Growth Management Agreement (1995) 5 (city and county may enter into delayed annexation agreements with a developer in order to permit city approval of a development plan based on city development standards prior to annexation). When read in context with the urban growth management agreement, the first clause of [Policy 3], '[u]nless otherwise approved by the city,' allows the city to consider a request to annex vacant land without requiring that a specific development proposal accompany the annexation request, if a specific development proposal has already been 'approved by the city.' The urban growth management agreement identifies at least one instance where a specific development proposal may already have been approved by the city for land that has not yet been annexed to the city. That clause does not provide the city with open-ended authority to simply 'waive' the [Policy 3] requirement for a specific development proposal where no specific development proposal has been 'otherwise approved by the city.' The city's reading of the first clause of [Policy 3] to grant it

unqualified discretion to 'waive' the requirement for a specific development plan is not consistent with the language of [Policy 3].

"Our reading of [Policy 3] is also supported contextually by other annexation and LCP policies that seem to contemplate consideration of specific development proposals when assessing the adequacy of public facilities and services to serve the annexed property. *See, e.g.,* Annexation Policies 1, 2, 3 and LCP Public Facilities and Services Element, General Policy 2 * * *. Read together, those policies anticipate that the city will consider the impact of a specific development proposal on public facilities, and whether, as proposed, the development and annexation will foster the 'orderly and efficient' growth of the city."

*Just I*, 45 Or LUBA at 192-94 (third set of brackets in original).

■       We must affirm the city's interpretation of its own ordinance unless we determine that the city's "interpretation is inconsistent with the express language of the ordinance, considered in its context, or with the apparent purpose or policy of the ordinance." *Neighbors for Livability v. City of Beaverton*, 178 Or App 185, 190, 35 P3d 1122 (2001); *see also* ORS 197.829; *Church v. Grant County*, 187 Or App 518, 523-24, 69 P3d 759 (2003) (describing standard of review). For reasons that we will explain, we agree with LUBA's conclusion that the city's interpretation was inconsistent with the text and context of the pertinent portion of its plan.

We begin, as did LUBA, by examining the text and context of Policy 3 to determine the policymaker's intent. *Lincoln Loan Co. v. City of Portland*, 317 Or 192, 199, 855 P2d 151 (1993) ("The same rules that govern the construction of statutes apply to the construction of municipal ordinances."); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993) (describing methodology for statutory interpretation). As noted above, Policy 3 provides that, "[u]nless otherwise approved by the city, specific development proposals *shall* be required for annexation requests on vacant land adjacent to the city to [e]nsure completion within a reasonable time limit in conformance with a plan approved by the city." (Emphasis added.) When the city drafted its policy, it imposed a mandatory requirement that

specific development proposals accompany an annexation proposal. The city, however, provided an exception to that mandatory requirement with the introductory phrase "[u]nless otherwise approved by the city."

The scope of that exception is unclear from those words alone. Specifically, it is not clear whether the exception allows the city to defer the requirement of a specific development proposal until after the approval of the annexation request. The context of Policy 3, however, resolves the ambiguity. As LUBA noted, Annexation Policies 1, 2, and 3 and LCP Public Facilities and Services Element, General Policy 2 provide contextual support for the conclusion that a city cannot approve an annexation without a specific development proposal. As LUBA indicated in its order,

"Annexation Policy 1 provides:

" 'The City of Lebanon shall require proof that urban services are available or can be made available to serve the property considered for annexation and that the additional demands that would be placed on those services will not overburden their present capacities.'

"Annexation Policy 2 provides:

" 'Public rights-of-way necessary for the safe and efficient movement of traffic, bicycles and pedestrians shall be provided with the annexation and without obligation to the City of Lebanon.'

"Annexation Policy 3 provides:

" 'Parties involved in seeking the annexation or who may be included in the annexation shall initiate a program to upgrade any urban services and/or public facilities within the area considered for annexation that do not meet standards as may be established by the City of Lebanon.'

"LCP Public Facilities and Services Element, General Policy 2 provides:

" 'The city shall consider impacts on community facilities before building, rezoning, or annexation requests are approved.' "

*Just*, 45 Or LUBA at 171 n 5. Those policies contemplate that the city will consider a specific development proposal. They require the city to consider the impact of the proposal on public facilities and services when the city makes its annexation decision.

Additionally, there is an urban growth management agreement between the city and the county.[4] The agreement provides that, under certain circumstances, a developer may seek and receive development approval from the city before the annexation of the subject property. The agreement contains an example of how a specific development proposal may be "otherwise approved" for the subject property before annexation. The urban growth management agreement demonstrates that the phrase in Policy 3—"unless otherwise approved"—means circumstances in which a specific development proposal *has previously been approved* by the city, as might occur under the provisions of the agreement.

Most importantly, however, the other annexation and public facilities policies that we have discussed contemplate that the city will consider the specific development proposal at the time that it makes its annexation decision. Thus, the wording of Policy 3 does not give the city discretion to waive the requirement of a specific development proposal, and the city cannot approve an annexation without such a proposal.

Nonetheless, petitioners contend that "[i]t is not rational for the City to chase potential development away by requiring a development proposal prior to annexing property" and that the annexation should be considered separately from specific development action. Petitioners may be correct, and the city may wish to amend its policies so to provide. However, as we have explained, the present wording of the *city's* policy and the context within which it appears provide otherwise. The city's interpretation of Policy 3 to allow it to waive the requirement of a specific development proposal is inconsistent with the text and context of its own policies, and LUBA did not err in reaching that conclusion.

---

[4] We do not understand from the record that the agreement is an ordinance.

Petitioners' second and third assignments of error concern LUBA's conclusion that the city's failure to require a specific development proposal undermines the adequacy of the city's findings concerning whether there is a public need for the annexation and whether urban services are sufficient to serve the property to be annexed. With regard to those assignments of error, we affirm LUBA without further discussion.

■ In their fourth assignment of error, petitioners assert that LUBA erred in "holding that the City did not adopt adequate findings to explain why the annexed property provides the most 'compact urban growth pattern.' " LUBA stated in its order that LCP Urbanization Element, Phased Growth Program, Policy 1 provides that the " 'city shall maintain a compact urban growth pattern that expands the city limits incrementally in an orderly and efficient manner within the service capabilities of the city.' " LUBA noted that the city found that (1) the annexation complied with that policy because it would be an orderly and efficient expansion of the city limits within the city's service capabilities and (2) certain areas adjacent to the property are within the city limits. LUBA, however, stated that it did not know what the city meant by a "compact urban growth pattern":

> "It may be that, despite the fact that the subject property is not currently within city limits, annexation is nonetheless consistent with this policy because, of all of the property that has the locational characteristics described as necessary to provide airport related development, the subject property provides the most 'compact urban growth pattern.' However, we agree with petitioner that the finding that the city did adopt is not adequate to explain why such is the case."

*Just*, 45 Or LUBA at 177.

We agree with LUBA's conclusion. The city's findings are merely conclusions that do not specifically and directly address the policy. Although its findings need not be elaborate, and "no magic words need be employed," *Sunnyside Neighborhood v. Clackamas Co. Comm.*, 280 Or 3, 21, 569 P2d 1063 (1977), the city must explain why the territory annexed maintains "a compact urban growth pattern."

Finally, in their fifth assignment of error, petitioners assert that, "[i]f this Court overturns LUBA's remand of the City's approval of [the] Annexation Request, LUBA's decision to remand the rezoning issue must also be overturned." In light of our disposition, we need not reach that assignment of error.

We now turn to Just's cross-assignment of error, in which he asserts that "LUBA's decision affirming the City of Lebanon's decision approving the rezoning misconstrues and violates applicable law." Specifically, Just contends that LUBA "failed to remand the City's decision with instructions to apply the relevant standards for zone changes." Gilbert moved to strike Just's cross-assignment of error, arguing that Just was required to file a cross-petition for judicial review to raise the issue. Regardless of whether Just's cross-assignment was procedurally proper, we do not address it in light of our disposition. Accordingly, we deny Gilbert's motion to strike the cross-assignment.

Affirmed.