Argued and submitted May 13, affirmed on petition and cross-petition
August 13, 2008

David VANSPEYBROECK,
*Petitioner*
*Cross-Respondent,*

*v.*

TILLAMOOK COUNTY
and Camden Inns, LLC,
*Respondents,*

*and*

Slawomir PISKORSKI,
*Respondent*
*Cross-Petitioner.*

Craig SWINFORD,
Anne Swinford, Richard Butler, Sue Butler,
Robert Steele, Carleen Steele, Barbara Rice,
Robert Apperson, Carol Apperson,
Fred Panzer, and Gail Panzer,
*Petitioners*
*Cross-Respondents,*

*and*

Wes PRICE
and Diane Price,
*Petitioners below,*

*v.*

TILLAMOOK COUNTY
and Camden Inns, LLC,
*Respondents,*

*and*

Slawomir PISKORSKI,
*Respondent*
*Cross-Petitioner.*

Land Use Board of Appeals
2007098, 2007099; A138330

191 P3d 712

Edward J. Sullivan argued the cause for petitioners - cross-respondents. With him on the briefs were William K. Kabeiseman, Carrie A. Richter, and Garvey Schubert Barer.

Andrew H. Stamp argued the cause for respondent - cross-petitioner. With him on the brief was Andrew H. Stamp, P.C.

No appearance for respondents Tillamook County and Camden Inns, LLC.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Petitioners appealed a county decision to the Land Use Board of Appeals (LUBA). The decision approved a building permit for the expansion and remodeling of a mixed-use commercial structure to include motel dwelling units on an added third floor of the building, a different configuration of a second-floor residential unit, and a new arrangement of the first-floor tavern. The decision also verified and approved the second-floor residence as a nonconforming use. LUBA's opinion and order upheld the county's nonconforming use findings, but remanded for further determinations on the nonconforming use status of the remodeled first-floor tavern. *VanSpeybroeck v. Tillamook County,* ___ Or LUBA ___ , 2008 WL 611617 (2008). Petitioners, nearby residents who object to the expansion, seek review, claiming that LUBA erred in its approval of the county's nonconforming use determinations on the residence. Respondent Piskorski, the property owner, cross-petitions for review, asserting that LUBA erred in remanding for further determinations on the tavern uses. Based on the standards of review of a LUBA order under ORS 197.850(9), we affirm on the petition and cross-petition.

LUBA's opinion states the relevant facts. The controversy concerns a remodel and expansion of the Anchor Tavern, located in the Oceanside community in Tillamook County. In 1940, a two-story building was moved to the subject property. The first floor of the building was used as a tavern and the second floor as a residence for the owner. The property was first zoned in 1981 by Tillamook County as a Neighborhood Commercial Zoning District; the same zoning was imposed in 1998 under a different name, Commercial Oceanside (COS), and the zoning has remained the same since then. The commercial zoning allows the tavern ("eating and drinking establishment") and residential use ("dwelling unit or units accessory to an active commercial use, located above the first story") as outright permitted uses and authorizes the motel use as a conditional use ("motel or hotel containing not more than 35 units").

The tavern and residential uses, however, are nonconforming uses. A nonconforming use is one that " 'lawfully

existed prior to enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area * * *.' " *Clackamas County v. Portland City Temple*, 13 Or App 459, 461 n 1, 511 P2d 412 (1973) (quoting 1 Anderson, *American Law of Zoning* 306, § 6.01 (1968)). Under state and local law, a nonconforming use can continue until abandoned, but alterations or replacements of the use are regulated. ORS 215.130. In this case, because the building occupies almost the entire lot, there is no room for the off-street parking for the tavern and residence that has been required by the zoning ordinance since 1981. The Tillamook County Land Use Ordinance ("TCLUO") requires one parking space for each 150 square feet of floor area for an eating and drinking establishment, two parking spaces for a dwelling unit, and one parking space for each motel or hotel unit. Thus, the ongoing tavern and residential uses are nonconforming uses because of the lack of parking.

In 2004, the then-owner of the property, Camden Inns, LLC (Camden) filed a conditional use application to allow a 10-unit motel on an expanded second floor and new third floor of the building. The submitted plans included expansion and remodeling of the tavern on the first floor, purportedly to comply with federal requirements for access for persons with disabilities. Camden proposed to build a parking lot in the adjacent residential neighborhood to meet the parking requirements. The request met with heavy opposition, largely because of the parking lot. Camden proposed, and the planning commission agreed to, a compromise—the reduction of the motel use to five units and elimination of the parking requirements for that use. The conditional use permit application was approved on that basis in October 2004. That allowance, however, said little about any alteration of the tavern and residence nonconforming uses.

Later that year, Camden applied for and obtained a building permit to expand and remodel the building. That permit was appealed to the planning commission. The opponents contended that the October 2004 conditional use permit compromise limited the use to a two-story structure, with five motel rooms on the second floor. The opponents also complained that planning review was needed for the changes to

the nonconforming tavern and residence uses. The planning commission upheld the building permit, concluding that the conditional use permit did not limit the number of stories but instead set a height limitation of 35 feet. The commission further determined that the remodel and expansion of the tavern did not need nonconforming use review because TCLUO 7.020(10) allows alterations that are "necessary to comply with any lawful requirement," but that the remodel of the second floor for continued residential use did require nonconforming use review and had not been reviewed as part of the conditional use permit approval.

After an appeal, the board of county commissioners (board) approved the building permit in December 2005. The board remanded some part of the proceedings to the planning commission for a determination of whether major or minor nonconforming use review was required for the changes to the second floor residence. The planning commission discussed that issue at a public meeting and, without holding a public hearing, issued a decision requiring minor nonconforming use review under TCLUO 7.020(11). The decision stated that it could be appealed to the board and a copy of the decision was given to petitioners.

Camden then applied for minor nonconforming use review for the residence. That application was approved by the planning commission, and, on appeal, the approval was affirmed by the board in May 2007. That decision also incorporated the earlier December 2005 approval of the building permit. From the county's perspective, the May 2007 decision concluded land use review of the expansion of the Anchor Tavern because the motel uses had been authorized by the 2004 conditional use permit, the alteration of the residential nonconforming use was approved, and review of the nonconforming tavern use expansion was not needed because the changes were required by federal law.

Petitioners appealed the May 2007 decision to LUBA. LUBA upheld all but one the county's determinations, including those that verified the nonconforming use status of the second-floor residence, precluded contest of the planning commission's determination to use a minor review process for that verification, and sustained the application of

the standards for approving the alteration of the nonconforming residence use. LUBA, however, found that the county erred in not requiring nonconforming use review for the expansion and remodeling of the first-floor tavern. Petitioners seek review of LUBA's approval of the county's verification of the nonconforming residence and the county's choice of process. The successor to Camden cross-petitions for review of the board's decision on the need for nonconforming use review of the tavern expansion.

■ Petitioners' first assignment of error asserts that LUBA erred in upholding county findings that the second-floor residence remained a nonconforming use, notwithstanding changes in the type of occupancy of that residence since the imposition of the parking requirements. A use that becomes nonconforming with later county zoning may continue in the same form under ORS 215.130(5). ORS 215.130(5) and (7) provide, in part:

> "(5)  The lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued. Alteration of any such use may be permitted subject to subsection (9) of this section. Alteration of any such use shall be permitted when necessary to comply with any lawful requirement for alteration in the use. * * * A change of ownership or occupancy shall be permitted.

> "* * * * *

> "(7)(a)  Any use described in subsection (5) of this section may not be resumed after a period of interruption or abandonment unless the resumed use conforms with the requirements of zoning ordinances or regulations applicable at the time of the proposed resumption."[1]

---

[1] The Tillamook County Land Use Ordinance echoes state law on nonconforming uses. As we noted in *Marquam Farms Corp. v. Multnomah County*, 147 Or App 368, 380, 936 P2d 990 (1997), "[a]lthough counties may adopt certain legislation that refines or amplifies [ORS 215.130], *see Bither v. Baker Rock Crushing*, 249 Or 640, 438 P2d 988, 440 P2d 368 (1968), county legislation must be consistent with the state statute." TCLUO 7.020(3) provides that "[a] nonconforming use or structure may be continued at the level of use or dimension of structure existing on the date the applicable zoning went into effect, subject to the requirements of Section 7.020." (Uppercase deleted.) TCLUO 7.020(2) assigns the burden of proof in matters relating to the continuation, alteration, expansion, or replacement of a nonconforming use or structure to the applicant. The applicant must show that the current use or structure lawfully existed at the time the applicable zoning

In *Tylka v. Clackamas County*, 28 Or LUBA 417, 429 (1994), LUBA correctly described the local government decisional process under ORS 215.130 when an alteration of a nonconforming use is requested:

> "In determining whether to approve a proposed use of property as an alteration of a nonconforming use, where the local government has not previously determined that a nonconforming use exists, there are generally four inquiries that the local government must make. First, did the use lawfully exist at the time the zoning which first made the use unlawful was applied? Second, what was the nature and extent of the use at the time it became nonconforming? Third, if the use lawfully existed at the time restrictive zoning was applied, has the use been discontinued or abandoned such that the right to continue the use or that part of the use as a nonconforming use was lost? Fourth, to the extent the proposed use constitutes an alteration of the lawfully established nonconforming use, structure or physical improvements, does that alteration comply with the standards governing alteration of nonconforming uses?"

(Citation and footnote omitted.)

Petitioners contend that LUBA erred in upholding the county's conclusions on the third of those inquiries—whether the second-floor residential use of the structure continued and was not abandoned. The board of county commissioners determined that residential use of the second floor was a verified nonconforming use that continued until close to the time of the application for alteration. The board found that the owner of the tavern used the second floor as a residence from 1966 until 1980, the second floor was leased to nonowner occupants between 1980 and 1986, and then occupied by the owners until 2004. The board determined that any change in the character of the occupants did not change the type of use allowed under the COS zone, as a "dwelling unit or units accessory to an active commercial use, located

requirement went into effect," and the "level of use and/or dimensions of the structure that existed at the time the applicable zoning went into effect." TCLUO 7.020(4) allows alterations of a nonconforming use "subject to all other provisions of this ordinance." TCLUO 7.020(6)(a) requires that if "a nonconforming use is discontinued for a period of one year, subsequent use of the property shall conform to this Ordinance." (Uppercase deleted.)

above the first story," TCLUO 3.312(2)(i), and break the continuity of the nonconforming use. The board interpreted "accessory" use to mean one that is of lesser scale and intensity than the primary use. Thus, the board concluded that the "level of use" of the nonconforming use continued under TCLUO 7.020(3) and was not abandoned.

Petitioners argued to LUBA that the county erred in making that determination. LUBA rejected petitioners' contention, concluding that,

"[a]s intervenors note, the premise to petitioners' argument is that the '[d]welling unit or units accessory to an active commercial use' permitted under TCLUO 3.312(2)(i) may only be occupied by the owner or employees of the commercial use. The [board] adopted an interpretation to the contrary. Petitioners do not acknowledge that interpretation, or explain why it is reversible under the somewhat deferential standard of review we must apply to a governing body's interpretation of a local land use regulation. ORS 197.829(1); *Church v. Grant County*, 187 Or App 518, 524, 69 P3d 759 (2003). We do not see that the [board's] interpretation is inconsistent with the text or context of TCLUO 3.312(2)(i)."

*VanSpeybroeck*, ____ Or LUBA at ____ (slip op at 11-12) (footnotes omitted).

On review, petitioners evade that same point. Our review of LUBA's order and opinion under ORS 197.850(9)(a) is whether it is "unlawful in substance or procedure." LUBA did not substantively err in deferring to the county's interpretation of TCLUO 3.312(2)(i) as allowing either renter-occupied or owner-occupied accessory residential use, and petitioners make no case to the contrary.

Instead, petitioners appear to argue that LUBA erred in upholding the county's categorization of a range of occupancies, the occupancies allowed under TCLUO 3.312(2)(i), as the nonconforming use, and the county's determination under ORS 215.130(7) that the nonconforming use had not been abandoned by a change in those occupancies from a renter occupation to an owner occupant.

■   Assuming that petitioners' contention was preserved before LUBA, it is not supported by the applicable state or local law. The nonconforming residential accessory use of the

structure continued notwithstanding a change in the type of occupant. ORS 215.130(5) plainly provides that a "change of ownership or occupancy shall be permitted" in a continuance of a nonconforming use. TCLUO 1.030 defines "nonconforming use" as a "structure or use that legally exists at the time this Ordinance * * * becomes effective, but which does not conform to the current requirements of the zone in which it is located." "Use" is broadly defined to include the "purpose * * * for which a unit of land is developed, occupied or maintained." *Id.* The same "use" of property continues, notwithstanding any change in the type of occupant, if property continues to be occupied for a consistent residential purpose. Thus, the single-family residential purpose of the second-floor occupancy continued through any change in the characteristic of the occupant as owner or renter, and the nonconforming use was not abandoned or discontinued by that change. LUBA did not err in sustaining county findings that the residential nonconforming use was not abandoned by the change in the type of occupancy.

Petitioners next claim that LUBA erred in concluding that they failed to exhaust their remedies in contesting a planning commission determination about the appropriate process for the nonconforming use review. TCLUO 7.020(4)(b) provides that expansion of a structure devoted to a nonconforming use is "subject to Minor Review under Section 7.020(11)." That subsection sets out particular standards to evaluate the nonconforming use change under an "administrative review" process.[2] By contrast, if the alteration of the

---

[2] TCLUO 7.020(11) provides:

"MINOR REVIEW: Application is made under the fee and procedures for an Administrative Review and is reviewed using the following review criteria. A request may be permitted if:

"(1) The request will have no greater adverse impact on neighboring areas than the existing use or structure when the current zoning went into effect, considering:

"(A) A comparison of existing use or structure with the proposed change using the following factors:

"(1) Noise, vibration, dust, odor, fumes, glare, or smoke detectable at the property line or off-site;

"(2) Numbers and kinds of vehicular trips to the site;

"(3) Amount and nature of outside storage, loading and parking;

"(4) Visual impact;

structure devoted to a nonconforming use costs more than the market value of the structure, "then [the alteration] shall be subject to Major Review under Section 7.020(12)." TCLUO 7.020(4)(a). Section 7.020(12) sets out standards in addition to the minor review standards to be applied during major review using a conditional use permit procedure. In the local government proceedings, petitioners argued that the county should have used the major review standards and process in evaluating the structural expansions for the nonconforming residence use.

When the board of commissioners determined that a review process was necessary to review structural changes to the residence nonconforming use, it remanded the building permit proceedings to the planning commission for a determination of whether a minor or major review process should be used. The board's findings describe the resulting determination:

> "In accepting the case back on remand, the Planning Commission first determined that the minor review process was the applicable process for this case. The Planning Commission issued a written Order on May 18, 2006. The Planning Staff mailed that Order to the parties. The Order clearly set forth appeal rights, and provided notice that such an appeal would be required to preserve error on that issue. None of the parties to the proceeding appealed the Order to the Board of Commissioners.
>
> "* * * * *

---

"(5) Hours of operation;

"(6) Effect on existing vegetation;

"(7) Effect on water drainage and water quality;

"(8) Service or other benefit to the use or structure provides to the area; and

"(9) Other factors relating to conflicts or incompatibility with the character or needs of the area.

"(B) The character and history of the use and of development in the surrounding area.

"(2) The request shall maintain a minimum separation of six feet between structures, and comply with the clear vision area of Section 4.010.

"The Department may require the applicant to submit a property survey or similar information to assist in making these determinations."

"The Board of Commissioners remanded the case to Planning Commission and the Planning Commission made a final, appealable order on that issue. That Order was not appealed. TCLUO § 10.030[3] states that '[a]n action or ruling of the Commission pursuant to this Ordinance may be appealed to the Board within 12 days after the Department's notification of the Commission's actions to the applicant.' This provision further states that if an appeal is not timely filed, 'the Commission's decision shall be final.' *Id.* The Board determines that the Planning Commission's decision became final by virtue of the fact that no timely appeal was filed by either party. The failure to file an appeal is a jurisdictional defect, and so the Board of Commissioners never obtained jurisdiction over this issue, and must accept the Planning Commission's decision on this point as final."

Before LUBA, petitioners argued that the county's "waiver" determination was incorrect because

"counsel for Petitioners did not receive notice of the hearing or decision, no evidence was heard at the hearing, and appeal of the minor review element was not required as it represented only one portion of the County's consideration of the building permit decision: the decision that is now on appeal."

Petitioners did not dispute the board's finding that the parties, including petitioners, received notice of the decision and their appeal rights.

The board interpreted TCLUO 10.030 to provide for an appeal of the planning commission's ruling and to categorize the unappealed ruling as "final" and not subject to collateral attack. ORS 197.829 requires LUBA to affirm a

---

[3] TCLUO 10.030 provides:

"An action or ruling of the COMMISSION pursuant to this Ordinance may be APPEALED to the BOARD within 12 days after the Department's notification of the Commission's action to the applicant. Written notice of the APPEAL must be filed with the BOARD, and a copy sent to the Department. If the APPEAL is not filed within the 12-day period, the COMMISSION'S decision shall be final. If an APPEAL is filed, the BOARD shall receive a report and recommendation from the Director, and shall hold a public hearing on the APPEAL."

(Uppercase in original.) The land use ordinance defines "appeal" to mean "a request for review of a Planning Director's or a Planning Commission's decision or interpretation of any provision of this Ordinance." TCLUO 1.030.

local government's interpretation of its land use regulations unless LUBA determines that the interpretation is inconsistent with the express language, purpose, or underlying policy of the regulation, or is inconsistent with the state law that the regulation implements. Petitioners did not challenge the board's interpretation of TCLUO 10.030 under ORS 197.829.

LUBA noted that lack of contest and found that TCLUO 10.030, as interpreted by the board, established the finality of the decision:

"ORS 197.825(2)(a) limits the Board's jurisdiction to 'those cases in which the petitioner has exhausted all remedies available by right' before appealing to LUBA. Petitioners do not challenge the county's determination that, under the county's code, an appeal of the planning commission's May 18, 2006 order was 'available,' or the interpretation that under the code the [board] lacked jurisdiction to consider any challenges to the unappealed May 18, 2006 order. * * *

"In our view, where the local code makes available an appeal of a lower body's decision to a higher local decision maker, the ORS 197.825(2)(a) exhaustion principle requires that a petitioner exhaust that available local remedy, even if the lower body's decision is part of a larger multi-step and procedurally complex proceeding, as in the present case. As a corollary, the petitioner cannot *instead* of filing a local appeal of that lower body's decision attempt to challenge the decision in an appeal of a later, related decision in that larger, multi-step proceeding. * * * Accordingly, we agree with the county and intervenor that we lack jurisdiction to address petitioners' challenges to the May 18, 2006 order, and the [board] did not err in concluding that petitioners' failure to appeal the planning commission's May 18, 2006 decision precludes petitioners from challenging that decision before the [board]."

On review, petitioners contend that LUBA erred in upholding the county's construction of TCLUO 10.030 to apply to their challenge to the nonconforming use review because they were not "parties" to the planning commission proceedings. Consequently, the appeal remedy was not "available by right" so as to trigger the preclusive effect of ORS 197.825(2)(a).[4] Petitioners also reiterate that the appeal

---

[4] ORS 197.825(2)(a) provides that "[t]he jurisdiction of [LUBA] * * * [i]s limited to those cases in which the petitioner has exhausted all remedies available by right before petitioning [LUBA] for review[.]"

requirement can apply only to quasi-judicial decisions of the commission and that the process used by the commission was not quasi-judicial in nature. Petitioners argue that TCLUO 10.030 allows only an applicant to appeal because it ties the time to appeal to "notification of the Commission's action to the applicant." Finally, petitioners renew their contention that the process determination was only a step in the county review of the building permit issuance and not "final" for purposes of review by the board of commissioners.

All of petitioners' arguments in this assignment necessarily go to the substantive correctness of LUBA's determinations, not to the validity of the findings and conclusions of the county. It is LUBA's order that we review under ORS 197.850(9) for whether it is "unlawful in substance." Petitioners' arguments about LUBA's review of the board's application of TCLUO 10.030 combine two discrete issues: whether the ordinance applies to the planning commission's ruling, a question of the proper interpretation of the ordinance; and whether that application of the ordinance is inconsistent with state law on land use hearing procedures.

■ With respect to the ordinance interpretation question, the board determined that TCLUO 10.030 applied to the planning commission ruling that a minor review process was required. That is to say, the board concluded that the planning commission's decision was an "action or ruling of the Commission" under the ordinance, that it was subject to appeal by petitioners, and that it was the type of decision that became final in the absence of an appeal. To whatever extent petitioners claim that the board's interpretation of TCLUO 10.030 was wrong and is not entitled to deference under ORS 197.829, that argument was not preserved.

■ ORAP 5.45(1) requires preservation of error in a lower court in order to consider the error on appeal. We apply that preservation requirement to administrative proceedings. *Veselik v. SAIF*, 177 Or App 280, 288, 33 P3d 1007 (2001), *rev den*, 344 Or 121 (2002); *Melton v. City of Cottage Grove*, 131 Or App 626, 628, 887 P2d 359 (1994) (lack of preservation where asserted errors were not raised before LUBA).

We have not always insisted that specific arguments about an issue be articulated to LUBA in order to preserve those arguments for review. *Holland v. City of Cannon Beach*, 138 Or App 340, 342, 908 P2d 838 (1995) (sufficient to raise general issue about application of comprehensive plan provisions in order to preserve specific contention about failure to incorporate plan standards into land use regulations).[5] No matter what specificity of objection before LUBA is required to preserve an issue, the ORS 197.829 issue was not preserved here. Before LUBA, petitioners did not frame their analysis of the board's interpretation of TCLUO 10.030 in terms of the ordinance's particular text, purpose, or underlying policy, as required by ORS 197.829. Thus, LUBA properly affirmed the board's interpretation of TCLUO 10.030 to apply to final planning commission rulings, whether made after a quasi-judicial hearing or not, and even if the ruling applies to related and ongoing proceedings.

■ The remaining type of contention is that the application of TCLUO 10.030 to foreclose petitioners' local remedy is inconsistent with state law. Petitioners' first argument presented to the board and reiterated on review is that the appeal requirement can apply only to quasi-judicial decisions of the commission where evidence can be presented. Petitioners reason that a quasi-judicial hearing was required before the county initially chose a minor review or major review process, and a ruling made without that type of hearing cannot be treated as final and preclusive under TCLUO 10.030.

---

[5] *Holland* relied on *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988), in its conclusion that it was sufficient to raise a general issue before LUBA in order to preserve arguments about that issue for review. The *Hitz* principles, however, have been refined in subsequent decisions to describe the rule of preservation "in more functional terms, emphasizing the underlying purposes of preservation—in particular, fairness and efficiency." *State v. Timmermann*, 220 Or App 458, 464, 187 P3d 744 (2008), relying on *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Under the statutes that apply to review of quasi-judicial local government land use decisions, the failure to raise an issue to a local decision-maker precludes appeal to LUBA based on that issue. ORS 197.195(3)(c)(B); ORS 197.763(5)(c); ORS 197.835(3). Moreover, review of local government land use decisions is subject to statutory deadlines for LUBA, ORS 197.830(14), and this court, ORS 197.855(1). That statutory framework suggests that issues be preserved at the local government level for board review, and at LUBA level for judicial review, in sufficient detail to allow a thorough examination of the issue by the decision-maker, so as to potentially obviate the need for further review or at least to make that review more efficient and timely.

But petitioners point to no state statute or state or federal constitutional provision that requires a quasi-judicial hearing before any choice of process ruling by a county planning commission and that preempts the application of TCLUO 10.030 as determined by the county, and we are aware of no such requirement. TCLUO 10.030 requires a "public hearing on the appeal" before the board of county commissioners when an appeal is filed from an action or ruling of the commission. Thus, a public hearing was available on the choice of process issue had petitioners appealed the planning commission ruling.

Similarly, petitioners do not identify any state statute or federal or state constitutional provision that prevents the county from giving preclusive effect to an unappealed planning commission ruling in related and ongoing proceedings. Because petitioners do not make a viable challenge to the county's interpretation of TCLUO 10.030, or present focused arguments on the facial legality of the ordinance or its lawfulness as applied, their second assignment of error fails.

■　　TCLUO 7.020(4)(b) requires that expansion of a structure devoted to a nonconforming use or alteration of a nonconforming use be subject to the minor review process under section 7.020(11). As noted earlier, TCLUO 7.020(11) requires a determination that the request "will have no greater adverse impact on neighboring areas than the existing use or structure when the current zoning went into effect," considering a number of factors, such as the quantity and type of vehicular trips to the site, visual impact, and other factors relating to conflicts or incompatibility of the structure or use with the character or needs of the area. Petitioners' third assignment of error complains that LUBA erred in evaluating their contentions about the county's findings on the application of the TCLUO 7.020(11) criteria to changes in the residence use and the expansion of the second floor. The county found that there would be no change in the character or intensity of the residential use, and that some of the structural changes were attributable to the changes approved as part of the hotel conditional use permit. Nonetheless, the county made extensive factual findings on the TCLUO 7.020(11) criteria.

LUBA sustained those findings as supported by substantial evidence. Our review of LUBA's decision in that regard is to determine whether LUBA properly understood and applied its substantial evidence standard of review. *Wetherell v. Douglas County*, 209 Or App 1, 4, 146 P3d 343 (2006). We recently explained:

> "If LUBA does not err in the articulation of its substantial evidence standard of review under ORS 197.835(9)(a)(C), we would reverse LUBA's decision only when there is no evidence to support the finding or if the evidence in the case is 'so at odds with LUBA's evaluation that a reviewing court could infer that LUBA had misunderstood or misapplied its scope of review.' *Younger* [*v. City of Portland*], 305 Or [346, 359, 752 P2d 262 (1988)]."

*Citizens for Responsibility v. Lane County*, 218 Or App 339, 345, 180 P3d 35 (2008). Tested by this standard, we sustain LUBA's review of the county's findings. We also reject petitioners' remaining arguments that LUBA's order was unlawful in substance in its review of the sufficiency of the county's findings under TCLUO 7.020(11).

■■ Respondent Piskorski cross-petitions for review of LUBA's remand for a nonconforming use review of the first-floor expansion and alteration of the tavern use. LUBA reasoned that some, but not all, of the structural changes were necessary to comply with federal law on access for persons with disabilities and within the TCLUO 7.020(10) exception for necessary alterations or expansions "to comply with any lawful requirement." We agree that nonconforming use review was necessary for those changes not compelled by federal law. Respondent suggests that the 2004 conditional use permit proceedings determined the nonconforming use issues. We concur with LUBA's determination that the conditional use proceedings only sought conditional use approval for the second- and third-floor construction, and that the first-floor plans in the building permit application differed significantly from the conditional use permit site plan. There was no preclusion of this issue by the 2004 conditional use proceedings because the issues were not identical, and the nonconforming use question was not actually litigated and essential to the conditional use permit decision. *See Lawrence v. Clackamas County*, 180 Or App 495, 503, 43 P3d

1192 (2002) (stating issue preclusion factors as including identity of issues and existence of a decision on a necessary determination in the prior proceeding). We reject, without discussion, respondent's remaining contentions on the cross-petition for review.

Affirmed on petition and cross-petition.