Argued and submitted June 10, affirmed on petition and cross-petitions
August 20, 2014

REGENCY CENTERS, L.P.,
*Petitioner below,*

*v.*

WASHINGTON COUNTY,
*Respondent below.*

Land Use Board of Appeals
2013091

TAKFAL PROPERTIES, LLC,
*Respondent
Cross-Petitioner,*

*v.*

WASHINGTON COUNTY,
*Petitioner
Cross-Respondent.*

Land Use Board of Appeals
2013093

MGP X PROPERTIES, LLC,
*Respondent
Cross-Petitioner,*

*v.*

WASHINGTON COUNTY,
*Petitioner
Cross-Respondent.*

Land Use Board of Appeals
2013094

A156513

335 P3d 856

Jacquilyn Saito-Moore, Senior Assistant County Counsel, argued the cause for Petitioner-Cross-Respondent. With her on the briefs was Office of Washington County Counsel.

Phillip E. Grillo argued the cause for respondent-cross-petitioner TakFal Properties, LLC. With him on the briefs was Davis Wright Tremaine LLP.

Ty K. Wyman argued the cause for respondent-cross-petitioner MGP X Properties, LLC. With him on the briefs were Brian R. Talcott and Dunn Carney Allen Higgins & Tongue LLP.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

### NAKAMOTO, J.

Washington County, TakFal Properties, LLC (Cinema), and MGP X Properties, LLC (Market Center) each seek judicial review of a final order of the Land Use Board of Appeals (LUBA).[1] In that order, LUBA remanded a county decision to remove a traffic signal located at the intersection of Tualatin Sherwood Road and the main entrances of Cinema's and Market Center's respective commercial properties, converting the access to those entrances to right-in, right-out only. On judicial review, the county asserts that LUBA improperly concluded that it had jurisdiction over the county's decision and erred in remanding to the county to determine whether its decision triggered the notice and hearing procedures under ORS 374.300 *et seq.* Cinema and Market Center argue in support of LUBA's order in those respects, but they assert in their respective cross-petitions that LUBA erred when it (1) concluded that the City of Sherwood's Traffic Control Master Plan did not require the traffic signal to remain at the location, (2) declined to address whether the county's decision was governed by OAR 660-012-0050(3) because deciding the issue could add nothing to LUBA's disposition on remand, and (3) declined to address whether the county's decision was a "permit" decision as defined in ORS 215.402(4) because petitioners had failed to adequately develop the argument for review. We affirm LUBA's order with respect to the county's assignments of error without discussion.[2] We write to address only

---

[1] Cinema and Market Center were the petitioners below to LUBA. On judicial review in this court, Washington County is the petitioner and Cinema and Market Center are cross-petitioners. For ease of reference, throughout this opinion we refer to Washington County as the county, and Cinema and Market Center collectively as petitioners.

[2] With regard to its jurisdictional challenge, the county argues that ORS 197.015(10)(b)(D) exempts its decision from LUBA jurisdiction because its decision was consistent with the county's comprehensive plans and land use regulations and that the city's comprehensive plan and land use regulations did not apply, and, even if they did, that its decision was consistent with them. We note that LUBA's remand of the county's decision requires the county to determine, in the first instance, the applicability of the county and city plans and regulations to its decision, and if applicable, review its decision for consistency with those provisions. With regard to the county's argument under ORS 374.300 *et seq.*, LUBA's remand also requires the county to determine, in the first instance, the applicability of ORS 374.305(2) and ORS 374.309(3) to its decision. Given the spare record and lack of county explanation of those issues to LUBA, it is appropriate for the county to more fully develop that record at the county level first, rather

petitioners' cross-petitions. As to those, we review to determine whether LUBA's order was "unlawful in substance or procedure" under ORS 197.850(9)(a) and affirm.

## I. BACKGROUND

Except as noted below, the parties do not challenge the background facts found by LUBA, so we take the following facts from LUBA's order:

"Petitioner [Cinema] owns the Sherwood Cinema Center located north of Tualatin Sherwood Road and east of Highway 99W in the City of Sherwood ([c]ity). Petitioner [Market Center] owns the Sherwood Market Center located south of Tualatin Sherwood Road and east of Highway 99W in the [c]ity. Where Cinema and Market Center make overlapping arguments in these consolidated appeals, we refer to them collectively as petitioners.

"Tualatin Sherwood Road is a facility that is owned, operated and maintained by the county. The portion of Tualatin Sherwood Road that is subject to the challenged decision is located entirely within the incorporated City of Sherwood. The four-way intersection of Tualatin Sherwood Road and [the driveways into petitioners' properties[3]] is located approximately 500 feet east of the intersection of Tualatin Sherwood Road and Highway 99W. A traffic signal at Tualatin Sherwood Road/[petitioners' driveways] intersection regulates traffic flow at the intersection and the intersection includes two left turn lanes from east bound Tualatin Sherwood Road north onto [Cinema's driveway] into Cinema's property. The traffic signal was installed sometime between 1995 and 1997 in order to satisfy a condition of approval of the [c]ity's 1994 decision approving Market Center's site plan. *** The east bound left turn lanes from Tualatin Sherwood Road onto [Cinema's

---

than for us to try to make that decision here without the benefit of a developed record, full analysis, or, in some instances, preserved error.

[3] LUBA mistakenly identified the intersection to be with "S.W. Langer Drive." However, as pointed out by the parties, it appears that the driveways into petitioners' respective properties are not named. A road named S.W. Langer Drive is nearby but appears to no longer intersect with Tualatin Sherwood Road; that intersection is with S.W. Baler Way. Nonetheless, LUBA accurately described the location of the intersection and in all other respects in its order demonstrated that it had correctly identified the traffic light and intersection. Accordingly, we have altered the fact statement above only to remove reference to S.W. Langer Drive to obviate any confusion.

driveway] were installed later by Cinema in order to satisfy a condition of approval of the [c]ity's 1998 decision approving a site plan for a theater on the Cinema's property. * * *

"In 2005, the county identified improvement of Tualatin Sherwood Road from its intersection with Adams Road (now known as Langer Parkway), located approximately 1500 feet east of the subject intersection, to its intersection with Borchers Road, located approximately 1500 feet west of the subject intersection and west of Highway 99W, as a Major Streets Transportation Improvement Program (MSTIP) project (the Borcher to Langer Parkway Project). In 2012, the Borcher to Langer Parkway Project received county funding.

"In 2012 and 2013, the county formed a project team that included the county, the [c]ity, a design consultant, a traffic engineer, and a geotechnical engineer to consider four possible alternatives for implementing the Borcher to Langer Parkway Project. * * *. Alternative 1 proposed removing the traffic signal at the intersection of Tualatin Sherwood Road and [petitioners' driveways] and eliminating the two left turn lanes from eastbound Tualatin Sherwood Road north onto [Cinema's driveway], thereby changing petitioners' access to and egress from Tualatin Sherwood Road at [petitioners' driveways] to right-in and right-out only. The county engineer recommended Alternative 1 to the county's director of land use and transportation. In September, 2013, the county's director of land use and transportation approved the recommendation, and these appeals followed."

(Record citations and footnotes omitted.)

In its order, LUBA first determined that it had jurisdiction to review the county's decision because it was a "land use decision" under ORS 197.015(10). LUBA then addressed each of petitioners' eight assignments of error. Briefly, LUBA sustained in part and remanded to the county with respect to petitioners' second, third, fifth, and sixth assignments of error. LUBA's remand under Market Center's sixth assignment of error requires the county to "determine whether the project is a Category A, B, or C project [under the Washington County Community Development Code] and review and process it according to the procedures and development standards that it determines to apply to each type of project." LUBA's remand on petitioners' second and fifth assignments

of error and Cinema's sixth assignment of error requires the county to give petitioners an opportunity to argue which provisions of the county's Transportation System Plan strategies and the city's planning legislation and development code cited in their petitions apply to the county's decision, to determine if any cited provisions apply, and, if they do apply, to review its decision for compliance with those provisions. Finally, LUBA's remand on petitioners' third assignments of error requires the county to determine the applicability of the notice and hearing requirements in ORS 374.305(2) and "whether ORS 374.309(3) applies in the circumstances presented in this appeal and, if it does, apply the criteria in ORS 374.309(3) to determine whether the proposal leaves abutting properties with reasonable access."

LUBA denied petitioners' first, fourth, seventh, and eighth assignments of error. Petitioners' cross-petitions challenge LUBA's denial of their first, fourth, and seventh assignments of error.

## II.   PETITIONERS' CROSS-PETITIONS FOR JUDICIAL REVIEW

### A.   *City Traffic Control Master Plan—Petitioners' First Assignments of Error*

In their respective first assignments of error to LUBA, petitioners argued that, because the city's Traffic Control Master Plan, in "figure 8-10," indicated that a signal is located at the intersection of Tualatin Sherwood Road and petitioners' driveways, the city's Transportation System Plan (City TSP) requires the intersection to be a signalized intersection, and, thus, the county's decision to remove that signal conflicts with the City TSP. Cinema elsewhere in its petition also asserted, without citation to any support, that "[b]ecause the traffic signal is shown on the City[] TSP, the county cannot eliminate the signal without amending the City[] TSP." Market Center, for its part, also asserted, without any elaboration, that, because the city's Traffic Control Master Plan depicts the signal, the county must comply with that plan under Oregon Statewide Planning Goal 2, Part 1, OAR 660-015-0000(2) ("City, county, state and federal agency and special district plans and actions related to land use shall be consistent with the comprehensive plans

of cities and counties and regional plans adopted under ORS Chapter 268.").

LUBA concluded:

"As we concluded in our resolution of the jurisdictional challenges, even if a figure in the [c]ity's Traffic Control Master Plan shows existing traffic signals within the city, Cinema points to nothing in the Traffic Control Master Plan that *requires* the signal or prohibits the removal of a traffic signal that is shown in the Traffic Control Master Plan. Accordingly, even assuming that the [c]ity's Traffic Control Master Plan applies to the county's decision, Cinema's first assignment of error provides no basis for reversal or remand.

"We additionally reject Market Center's first assignment of error because Market Center has not demonstrated that Goal 2 applies to the county's decision, where the county has an adopted and acknowledged comprehensive plan and land use regulations. *See* ORS 197.175(2)(d) (if a local government's comprehensive plan and land use regulations have been acknowledged, the local government must make land use decisions and limited land use decisions in compliance with the acknowledged plan and land use regulations)."

(Emphasis in original.)

Petitioners challenge LUBA's rejection of their first assignments of error. Cinema argues that figure 8-10 in the city's Traffic Control Master Plan is on equal footing with the text of the City TSP, ORS 197.010(1)(b), and that the figure "was intended by the Sherwood City Council as the location of traffic control devices needed to implement the [c]ity's comprehensive plan." To elaborate on its position, Cinema attached to its cross-petition additional portions of the City TSP that it did not include in the record below to LUBA that Cinema argues demonstrates the intent of the city in adopting figure 8-10.[4] Cinema did not provide to LUBA any of the

---

[4] On judicial review, Market Center has abandoned its argument based on Goal 2, and instead argues that, because the city's Traffic Control Master Plan is a comprehensive plan, the county was required to making findings of consistency with it under OAR 660-012-0050(3). Because that argument relates to petitioners' fourth assignments of error to LUBA, we address it in our discussion of that assignment below, 265 Or App at 58 n 6.

analysis regarding the text, context, or intent of the city in adopting the city's Traffic Control Master Plan that it now provides to us. As a result, Cinema has not preserved the issue, as now framed, for our review. *See VanSpeybroeck v. Tillamook County*, 221 Or App 677, 691, 191 P3d 712 (2008) (holding issue not preserved for review when, "[b]efore LUBA, petitioners did not frame their analysis of the board's interpretation of TCLUO 10.030 in terms of the ordinance's particular text, purpose, or underlying policy, as required by ORS 197.829"). Additionally, our review is confined to the record before LUBA, and we will not consider new arguments and supporting evidence attached to Cinema's cross-petition to us, particularly where, as here, Cinema provides no argument or explanation as to why we can now consider this theory and extra-record information on review. ORS 197.850(8) ("Judicial review of an order issued under ORS 197.830 to 197.845 shall be confined to the record.").

Confining our review to petitioners' preserved contentions and the record on review, the portion of the City TSP text that Cinema did provide to LUBA below demonstrates that LUBA was correct in concluding that the City TSP does not *require* a signal at any location depicted on figure 8-10. As provided to LUBA, the purpose of figure 8-10 is to provide a master plan of traffic signal locations to guide placement of potential future signals to avoid conflicts:

> "To guide future implementation of traffic signals to locations that have the maximum public benefit by serving arterial/collector/neighborhood routes, a framework master plan of traffic signal locations was developed (Figure 8-10). The intent of this plan is to outline potential locations where future traffic signals would be placed to avoid conflicts with other development site oriented signal placement."

Nothing in the text of the City TSP or in the depiction of "potential locations" of signals on figure 8-10 requires signals to be placed in those locations or requires that any currently existing signals remain, and petitioners failed to make any argument to LUBA to support their contrary position.

We thus conclude that LUBA's decision was not "unlawful in substance" in rejecting petitioners' first assignments of error.

B. *Transportation Planning Rule—Petitioners' Fourth Assignments of Error*

In their respective fourth assignments of error to LUBA, petitioners argued that, under a provision in the Transportation Planning Rule, OAR 660-012-0050(3), the county's decision involved "land use decision-making" and, thus, the county was required to make the decision in accordance with a land use decision-making process.[5]

LUBA agreed with petitioners' general proposition that OAR 660-012-0050(3) "requires the county to make the

---

[5] OAR 660-012-0050(3) sets out the circumstances in which transportation project development involves "land use decision-making." That rule provides:

"Project development addresses how a transportation facility or improvement authorized in a TSP is designed and constructed. This may or may not require land use decision-making. The focus of project development is project implementation, e.g. alignment, preliminary design and mitigation of impacts. During project development, projects authorized in an acknowledged TSP shall not be subject to further justification with regard to their need, mode, function, or general location. For purposes of this section, a project is authorized in a TSP where the TSP makes decisions about transportation need, mode, function and general location for the facility or improvement as required by this division.

"(a) Project development does not involve land use decision-making to the extent that it involves transportation facilities, services or improvements identified in OAR 660-012-0045(1)(a); the application of uniform road improvement design standards and other uniformly accepted engineering design standards and practices that are applied during project implementation; procedures and standards for right-of-way acquisition as set forth in the Oregon Revised Statutes; or the application of local, state or federal rules and regulations that are not a part of the local government's land use regulations.

"(b) Project development involves land use decision-making to the extent that issues of compliance with applicable requirements requiring interpretation or the exercise of policy or legal discretion or judgment remain outstanding at the project development phase. These requirements may include, but are not limited to, regulations protecting or regulating development within floodways and other hazard areas, identified Goal 5 resource areas, estuarine and coastal shoreland areas, and the Willamette River Greenway, and local regulations establishing land use standards or processes for selecting specific alignments. They also may include transportation improvements required to comply with ORS 215.296 or 660-012-0065(5). When project development involves land use decision-making, all unresolved issues of compliance with applicable acknowledged comprehensive plan policies and land use regulations shall be addressed and findings of compliance adopted prior to project approval.

"(c) To the extent compliance with local requirements has already been determined during transportation system planning, including adoption of a refinement plan, affected local governments may rely on and reference the earlier findings of compliance with applicable standards."

challenged decision in accordance with the county's adopted procedures for making land use decisions, and requires the county to adopt findings that the decision complies with all applicable acknowledged comprehensive plan policies and land use regulations." However, LUBA denied petitioners' fourth assignments of error because they added nothing to what LUBA was requiring the county to do on remand under petitioners' second, fifth, and sixth assignments of error. LUBA explained:

"[O]n remand the county must determine whether the project is a Category A, B, or C project and adopt findings that determine which, if any, city or county comprehensive plan policies and land use regulations are 'applicable,' and adopt findings addressing whether the project complies with all applicable comprehensive plan policies and land use regulations. Petitioners' arguments under the fourth assignment of error add nothing to those dispositions, and accordingly are denied."

On review, petitioners ask us to determine that LUBA's decision is "unlawful in substance" because their fourth assignments of error below were not merely derivative of other assignments of error and would add to the disposition on remand because it involves a different legal standard. In particular, Cinema argues:

"If LUBA had sustained [Cinema's] fourth assignment of error, as it should have, its disposition of [Cinema's] fourth assignment of error would have materially added to LUBA's disposition * * * because it would have determined that the challenged decision was a 'project development decision' that involves land use decision making, and that OAR 660-012-0050(3) applies."

Cinema's argument, however, does not attempt to explain why such a finding would have added anything to LUBA's remand to the county. And, Market Center offers no argument directed at LUBA's reasoning in rejecting that assignment of error.[6] It is likely that petitioners offer no explanation

---

[6] Market Center conflates its fourth and first assignments of error below and argues that OAR 660-012-0050(3) requires us to conclude that the city's Traffic Control Master Plan requires the signal at the location because the rule requires the county to make findings of consistency with applicable comprehensive plans. However, the county has already been directed by LUBA to determine on remand whether the City TSP, which includes the Traffic Control Master Plan, applies to

as to why sustaining their fourth assignments of error would add to LUBA's disposition on remand because, as we conclude, LUBA was correct—sustaining petitioners' fourth assignments of error would add nothing. A determination that OAR 660-012-0050(3) applies to the county's decision (*i.e.*, it is a "project development" decision), and that the county's decision involves land use decision-making under that rule, could result only in one disposition: on remand, the county would be required to determine which county and city comprehensive plans and land use regulations apply to its decision and to make findings of compliance with those plans and regulations before project approval. OAR 660-012-0050(3)(b) ("When project development involves land use decision-making, all unresolved issues of compliance with applicable acknowledged comprehensive plan policies and land use regulations shall be addressed and findings of compliance adopted prior to project approval."). That is precisely what LUBA directed the county to do on remand under petitioners' second, fifth, and sixth assignments of error. Accordingly, LUBA's order was not "unlawful in substance" with respect to petitioners' fourth assignments of error.

C.  *"Permit" Decision—Petitioners' Seventh Assignments of Error*

In their respective seventh assignments of error to LUBA, petitioners argued that the county's decision was a land use "permit" decision as defined in ORS 215.402(4). Under that statute, "'[p]ermit' means discretionary approval of a proposed development of land under ORS 215.010 to 215.311, 215.317, 215.327 and 215.402 to 215.438 and 215.700 to 215.780 or county legislation or regulation adopted pursuant thereto." Under ORS 215.402(4)(c), excluded from the definition of "permit" is "[a] decision which determines final engineering design, construction, operation, maintenance, repair or preservation of a transportation facility which is otherwise authorized by and consistent with the comprehensive plan and land use regulations[.]" That language

---

its decision and to make findings of consistency if it does. A separate directive to the county to determine whether the city's Traffic Control Master Plan applies to its decision, and, if it does, to make findings of consistency, would add nothing to LUBA's disposition below.

is identical to the exception from the definition of "land use decision" in ORS 197.015(10)(b)(D), which LUBA had determined did not apply in exercising jurisdiction over the county's decision.

Petitioners asserted to LUBA that, because the exception to the definition of permit in ORS 215.403(4)(c) did not apply, the county's decision must be a permit decision. From that point, petitioners concluded that the county failed to comply with the notice and hearing requirements for such decisions. Below, Cinema simply asserted, without supporting explanation or reference to other arguments, that the county's decision involved the discretionary approval of a proposed development of land; Market Center did not elaborate on that assertion.

LUBA denied that assignment of error as insufficiently developed for review, explaining that,

"even if a decision regarding a transportation facility is not excluded from the definition of 'permit' under ORS 215.402(4), petitioners must additionally demonstrate that the decision is in fact the 'discretionary approval of a proposed development of land' in order to succeed in assigning error to the county's decision based on its failure to process the decision as a permit.

"Here, petitioners assert that the director's decision involves the 'discretionary approval of a proposed development of land,' but do not otherwise support their assertion with any argument as to why the director's decision involves 'discretionary approval' or is the 'proposed development of land,' and is a 'permit' under ORS 215.402(4). Petitioners' argument is insufficiently developed for review and provides no basis for reversal or remand of the decision."

We focus on and reject petitioners' arguments that they developed an argument below that the county's decision involved a "proposed development of land" under ORS 215.402(4).[7] Petitioners do not disagree with LUBA that, to

---

[7] With regard to the term "discretionary approval" under ORS 215.402(4), petitioners assert that, by concluding that the county's decision was a land use decision and taking jurisdiction of the matter, LUBA necessarily concluded that the county's decision was a discretionary decision. We do not address those arguments because, as noted, petitioners were also required to demonstrate that the county's decision involved a "proposed development of land."

be a "permit" under ORS 215.402(4), the county's decision had to involve a "proposed development of land." Petitioners instead assert that they sufficiently developed that argument through other sections of their petitions. Cinema argues, based on quotes of factual assertions taken from scattered portions of petitioners' briefs—including that the decision removes a signal and turn lanes constructed to obtain site plan approval—that they demonstrated that the county's decision was a "proposed development of land" under ORS 215.402(4). Cinema also, for the first time, makes an argument regarding the statutory meaning of "proposed development of land" to apply to the scattered references from the petitions below. Market Center asserts, without developed argument or discussion of the statutory language, that its argument below that the county's decision was "project development" under OAR 660-012-0050(3) also demonstrates that the county's decision was a "proposed development of land" under ORS 215.402(4).

We agree with LUBA that petitioners did not sufficiently develop their arguments for review below. Just as we will not make arguments for petitioners that they do not make for themselves in this court, LUBA was not required to scour the petitions for material that potentially could have supported an argument that the county's decision involved a "proposed development of land" when petitioners did not make that argument for themselves. Accordingly, we conclude that LUBA's order was not "unlawful in substance" in denying petitioners' seventh assignments of error.

Affirmed on petition and cross-petitions.