DEVORE, J.
*112 Petitioners, Larry and Susan Perkett, seek review of an order of the Land Use Board of Appeals (LUBA) that reversed the decision of a Jackson County hearings officer who had, in part, verified their application to continue their nonconforming use of their property as an auto yard business in an area zoned for exclusive farm use (EFU). LUBA had agreed with respondent, Morgan, an adjoining property owner, that the Perketts' auto yard had not been a "lawful use" of the property, within the meaning of ORS 215.130(5), at the time that zoning was enacted and so could not continue as a permissible nonconforming use.[1] The Perketts assign error, arguing that LUBA misconstrued the term "lawful use" to encompass consideration of a violation of a former licensing statute for motor vehicle dealers. We agree, and we reverse and remand.
We state the facts as recounted in LUBA's order. Regency Centers, L.P. v. Washington County , 265 Or.App. 49, 52, 335 P.3d 856 (2014). The Perketts own 10 acres of which 1.6 acres is devoted to the purchase, repair, and sale of used vehicles and the storage of impounded or abandoned vehicles. In September 1973, Jackson County applied the first zoning to the property. It was an Open Space Development 5 zone, which did not allow an auto yard use. That use remained unpermitted when the county rezoned the property for EFU in 1982.
In June 2016, the Perketts filed an application asking the county to verify the auto yard, as well as three storage structures, as a permissible, nonconforming use under ORS 215.130 and the Jackson County Land Development Ordinance (LDO) chapter 11. The county issued a notice of a tentative decision to verify the nonconforming use. Morgan objected. A hearings officer considered Morgan's challenges and determined that the auto yard use, but not three storage structures, should be verified as a permissible, nonconforming use.
*113 Morgan appealed to LUBA, arguing, among other things, that the auto yard use had not been lawful prior to September 1973. Morgan argued that the use of the property as an auto yard was not a lawful use (a) because former ORS 481.305 (1971) prohibited buying and selling vehicles without a license from the Motor Vehicles Division of the Department of Transportation (DMV), and (b) because the Perketts lacked such a license at the time.[2] See former ORS 481.305(1) (providing in part that "no person shall carry on or conduct in this state the business of buying, selling or dealing in new or used motor vehicles * * * unless he has a license from the division authorizing him to carry on or conduct such business"); see also former ORS 481.990(8) (making violations of *920 ORS 481.305 punishable by up to a $500 fine and up to six months' imprisonment).
LUBA looked to its own decisions to find the meaning of "lawful use" in ORS 215.130(5). In Coonse v. Crook County , 22 Or. LUBA 138 (1991), LUBA considered a nonconforming logging business. LUBA held that the construction of a structure allegedly in violation of fire and building codes did not make the nonconforming use an "unlawful use." Id. at 144-45. In Rogue Advocates v. Jackson County , 69 Or. LUBA 271 (2014), LUBA addressed an asphalt batch plant. LUBA held that the failure to obtain an air quality permit from the Oregon Department of Environmental Quality did not render the use unlawful for purposes of ORS 215.130(5). Id. at 278-81. In both cases, LUBA deemed the statute to be chiefly concerned with compliance with then-existing zoning and land use regulations.
Now faced with Morgan's appeal, LUBA determined that "lawful use" in ORS 215.130(5) was "not concerned only with whether the use complied with state or local land use laws." Instead, LUBA reasoned that "lawful use"
*114 "may also be concerned with whether the use complied with state, federal or local non-land use laws, regulations or licensing requirements that are either (1) integrally related to zoning or land use requirements, or (2) for some other reason must be satisfied for a use to be 'lawful.' "
(Emphasis added.) LUBA observed that the DMV license requirement "may not be 'integrally related' to zoning or land use requirements," but it determined that DMV licensing fit its second category involving authorization that should be received to make an activity lawful. LUBA concluded that "where an applicable local, state or federal law requires authorization of the use itself, such authorization must be obtained on or before the date the use becomes nonconforming, in order for the use to be a 'lawful use' for purposes of ORS 215.130(5)." LUBA reversed the county's recognition of the Perketts' auto yard as a permissible, nonconforming use.
We review LUBA's order to determine whether LUBA correctly construed the statute. See ORS 197.850(9)(a) (court may reverse or remand if it finds an order to be unlawful in substance). We give no deference to LUBA's rulings on legal questions. Grabhorn v. Washington County , 279 Or.App. 197, 203, 379 P.3d 796, rev. den. , 360 Or. 568, 385 P.3d 79 (2016).
Generally, "[a] lawful nonconforming use of land is one that is contrary to a land use ordinance but that nonetheless is allowed to continue because the use lawfully existed prior to the enactment of the ordinance." Rogue Advocates v. Board of Comm. of Jackson County , 277 Or.App. 651, 654, 372 P.3d 587 (2016), rev. dismissed , 362 Or. 269, 407 P.3d 795 (2017) (internal quotation marks omitted); ORS 215.130(5). To summarily prohibit a lawfully established use of land "would constitute a taking without compensation." Bergford v. Clack. Co./Trans. Serv. , 15 Or.App. 362, 367, 515 P.2d 1345 (1973). "Under state and local law, a nonconforming use can continue until abandoned, but alterations or replacements of the use are regulated." VanSpeybroeck v. Tillamook County , 221 Or.App. 677, 681, 191 P.3d 712 (2008).
Those principles are expressed in ORS 215.130. Its several subsections provide text and context for the issue presented. In its relevant parts, ORS 215.130 provides:
*115 "(5) The lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued. Alteration of any such use may be permitted subject to subsection (9) of this section. * * *
" * * * * *
"(7)(a) Any use described in subsection (5) of this section may not be resumed after a period of interruption or abandonment unless the resumed use conforms with the requirements of zoning ordinances or regulations applicable at the time of the proposed resumption.
" * * * * *
"(9) As used in this section, 'alteration' of a nonconforming use includes:
"(a) A change in the use of no greater adverse impact to the neighborhood; and *921 "(b) A change in the structure or physical improvements of no greater adverse impact to the neighborhood."
The parties arguments turn on those provisions and the context in which they appear.
On review before this court, the Perketts argue that LUBA erred in construing ORS 215.130(5).[3] They contend that the issue of "lawful use" is determined with reference to local zoning or land use regulations. They assert that LUBA erred when enlarging its understanding of the issue to consider whether their use was unlawful with reference to compliance with dealer-licensing statutes. Morgan responds that the phrase "lawful use" requires the Perketts to show "an activity that is lawful under all laws, not just land use laws." (Emphasis in original; boldface omitted.) In Morgan's view, "a 'use' that is 'lawful' is one that complies with all local, state, and federal laws in effect at the time the restrictive zoning ordinance is enacted." Morgan focuses *116 particularly on the word "lawful" itself, arguing that the legislature could have, but failed, to narrow the term "lawful" to land use.
The issue is one of first impression. As presented, the issue is a question whether the phrase, "lawful use," in ORS 215.130(5) is determined with reference to land use laws or, more broadly, with reference to other laws that would include business or occupational licensing. See Stull v. Hoke , 326 Or. 72, 77, 948 P.2d 722 (1997) (court's responsibility for identifying the correct interpretation of a statute). In resolving that question, our task is to discern the legislature's intent, beginning with an examination of the text of the statute in its context. See State v. Gaines , 346 Or. 160, 171, 206 P.3d 1042 (2009) (text and context provide the best evidence of the legislature's intent). That means that we do not ordinarily focus on a single word or phrase in isolation. Rather, "we construe each part [of a statute] together with the other parts in an attempt to produce a harmonious whole." Lane County v. LCDC , 325 Or. 569, 578, 942 P.2d 278 (1997). In doing so, "we consider all relevant statutes together, so that they may be interpreted as a coherent, workable whole." Unger v. Rosenblum , 362 Or. 210, 221, 407 P.3d 817 (2017).
We find helpful an introductory observation about the chapter in which ORS 215.130 may be found. Such an observation is helpful because the context of a statute includes other related provisions on the same subject. In this instance, ORS chapter 215 "generally governs county zoning and planning," Warburton v. Harney County , 174 Or.App. 322, 327, 25 P.3d 978 (2001), and "the authority of counties to zone land," Lane County , 325 Or. at 573, 942 P.2d 278. Generally speaking, ORS 215.130 concerns the application of county land use planning or zoning ordinances and comprehensive plans.
Given that background, the text and related text within ORS 215.130 begin to take on meaning. The term "lawful use" does not appear in isolation. Instead, the term is used with reference to other words. In critical part, the statute provides that "[t]he lawful use of any building, structure or land at the time of the enactment or amendment of *117 any zoning ordinance or regulation may be continued." ORS 215.130(5) (emphasis added). The "use" that is at issue is a "use of any building, structure or land." Therefore, the lawfulness of the use, which is at issue, relates to a law involving a building, structure, or land.
That meaning is reinforced by later words in the same provision, which refer to the lawful use "at the time of the enactment or amendment of any zoning ordinance or regulation." Those words reasonably suggest that the issue of lawfulness is a mirrored reflection of the reference to the unlawfulness of the use that is created by the enactment of new or amended zoning or land use regulation. Therefore, the lawfulness, which had been the prior state of affairs, was the lawfulness of the use under nonexistent or less restrictive zoning or land use regulations.
*922 Put another way, the direct implication of the explicit reference to new or amended land use laws is that the previously existing "lawful use" was "lawful use" under the prior zoning or land use regulations. Put simply, the provision concerns zoning and land use regulation. See Rathkopf et al , 4 Rathkopf's The Law of Zoning and Planning § 72:14 (4th ed 2017) (generally, lawful use is determined in reference to zoning ordinances, or laws regulating the use of land).
The context of subsection (5) of ORS 215.130 further reinforces the proposition that "lawful use" is a matter that involves laws concerning the use of a building, structure, or land as do zoning and land use regulation. Within subsection (5) is found the statement, "Alteration of any such use may be permitted subject to subsection (9) of this section." Subsection (9) provides that alteration of a nonconforming use includes a change in the use, structure, or physical improvements "of no greater adverse impact to the neighborhood. " (Emphasis added.) With its reference to the impact on the neighborhood, subsection (9) underscores that the kind of "use" that is at issue is a use of land.[4]
Business or occupational licensing, like the regulation of motor vehicle dealers under former ORS 481.305(1), *118 is regulation of a different sort.[5] Such a provision concerns the "business of buying, selling or dealing in new or used motor vehicles." Id . Such provisions concern registration of dealers, assurance of insurance, and keeping records of transactions. See former ORS 481.810 (bonds) ; former ORS 481.315 (dealer's license and record keeping); ORS 481.320 (registration of dealers and vehicles).[6] Such business or occupational licensing does not seek to regulate where , in particular, dealership activity may be located, and such occupational licensing does not regulate the "use of a building, structure or land" in any way generally comparable to zoning or land use regulation. Instead, occupational licensing is a system of regulation of businesses, professions, or occupations for the protection of the public in general. Cf. Coffey v. Board of Geologist Examiners , 348 Or. 494, 504-05, 235 P.3d 678 (2010) (referring to OAR 809-020-0001 to 809-020-0030 as describing several goals for professional geologists, e.g., honesty, integrity, and protection of the public health and welfare). Generally, business or occupational licensing is a system that does not regulate with regard to particular locations in the use of real properties. As such, licensing of motor vehicle dealers is not the sort of "law" that is at issue when ORS 215.130(5) refers to "lawful use of any building, structure or land."
As noted, Morgan argues that the legislature chose not to narrow the term "lawful" and therefore the term must require compliance with "all local, state, and federal laws." As we have observed, however, the legislature did narrow the term by reference to "lawful use of any building, structure, or land," and the legislature gave context with reference to "enactment or amendment of any zoning ordinance or regulation." Further, to contend "lawful use" implies compliance with business or occupational licensing would imply implausible legislative intent. A landlord who had long owned a *119 nonconforming shop on a street corner at the time of adoption of residential zoning, which would not allow a commercial use, would be told he did not have a "lawful use" if the barber who leased the shop space had unlawfully failed to maintain a barber's license. See ORS 690.046 (certification requirements); ORS 690.015 (prohibited acts); ORS 690.992 (Class B misdemeanor). Although the use of the shop had never changed, the barber's licensing violation would cause the landlord's property right to be forfeited. *923 Morgan notes that dealing in vehicles without a dealer's license is a criminal offense under former ORS 481.990(1), and argues that the seriousness of the offense underscores that the Perketts' use was surely not "lawful." The point about a criminal penalty, however, reveals a problem with tying business or occupational license into the question of determination of lawful, nonconforming use under ORS 215.130(5). Morgan's interpretation adds an implicit penalty to the explicit penalty the legislature had already chosen for violation of business or occupational licensing. When the legislature chose a penalty for violation of a requirement for licensing motor vehicle dealers or for other occupational licensing, the legislature chose specific personal penalties for violations such as fines or imprisonment. See former ORS 481.990(1) (providing fines or imprisonment); ORS 822.045 (penalties for dealer offenses). To make a violation of business or occupational licensing laws become grounds to deny a land owner recognition of a right to continue an otherwise lawful, nonconforming use would be a sanction that the legislature did not provide in the licensing statutes themselves. To posit such a seemingly unexpected consequence suggests that the legislature did not intend "lawful use" in ORS 215.130(5) to implicate laws other than those concerning zoning and land use regulations.
Morgan argues that the wording of the statute could not make sense if it referred only to lawfulness under existing land use laws, because the wording includes "the lawful use" of property "at the time of the enactment or amendment of any zoning ordinance or regulation," which contemplates assessing the lawfulness of a use at the time that land use restrictions were first applied to a property. We are not persuaded. The provision contemplates the changing *120 circumstances of both the enactment or amendment of zoning or other land use regulation. Thus, it is possible to conceive of lesser zoning or regulation as well as no zoning or land use regulation at the time of enactment of stricter restrictions.
In sum, to the extent that LUBA construed "lawful use" to include dealer licensing as a requirement that "for some other reason must be satisfied for a use to be 'lawful'," that construction was in error. That construction is inconsistent with ORS chapter 215 which governs zoning and land use. That construction disregards the limiting language that refers to "lawful use of any building, structure or land." That construction disregards the context of ORS 215.130(5), concerning zoning ordinances and impacts on neighborhoods. That construction suggests a broad reading of "lawful use" that is inconsistent with the legislative intent expressed in the distinctly different schemes of land use and business licensing. For those reasons, we conclude that ORS 215.130(5), which refers to the lawful use of buildings, structures, and land, does not refer to compliance with the former dealer licensing statute. As a consequence, LUBA erred in reversing the decision of the county hearings officer on the basis of a business licensing violation. We reverse LUBA's order on that basis and remand for consideration of any other issues raised, remaining, and unresolved in Morgan's appeal.
Reversed and remanded.

In part, ORS 215.130(5) provides, "The lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued."

Former ORS 481.305 (1971) was subsequently amended, Or. Laws 1975, ch. 451, § 195, Or. Laws 1977, ch. 674, § 2, and later repealed, Or. Laws 1983, ch. 338, § 978, when the legislature enacted the Oregon Vehicle Code. It was replaced by a similar provision in the vehicle code, which continues to require dealer licensing and provides that the lack of a license is a misdemeanor. See ORS 822.005. Former ORS 481.990 (1971) provided the applicable penalty for the offense; it was amended a number of times before being repealed. Or. Laws 1983, ch. 338, § 978. All references in this opinion to former ORS 481.305 and former ORS 481.990 are to the 1971 versions of those statutes.

In their second assignment of error, the Perketts conditionally argue that, even if LUBA did not err in its construction of the statute, it erred by directly applying the statute rather than applying the pertinent Jackson County ordinances that are the local government's implementation of the statutory provisions. In light of our disposition of the first assignment of error, we need not address petitioners' second assignment of error.

We have examined the legislative history provided by both parties. Nothing in that material is particularly useful or persuades us that the legislature intended any different meaning.

Current licensing is required by ORS 822.005 (requiring vehicle dealer certificate), and acting as a dealer without a license is a misdemeanor under ORS 822.005(3) (Class A misdemeanor).

The cited statutes were repealed, Or. Laws, ch. 338, § 978, and replaced by similar provisions. See ORS 822.020 (dealer certificate; insurance); ORS 822.027 (education requirements); ORS 822.030 (bond or letter of credit requirements); ORS 822.033 (insurance requirements).